William C. Reeves - 183878
MORALES FIERRO & REEVES
2300 Contra Costa Blvd., Suite 310
Pleasant Hill, CA 94523
Telephone: 925/288-1776
Facsimile: 925/288-1856
Email: wreeves@mfrlegal.com

Charles E. Merrill - 87861
MERRILL, NOMURA & MOLINEUX LLP
65 Oak Court
Danville, CA 94526
Telephone: 925/833-1000
Facsimile: 925/833-1001
Email: cmerrill@merrillnomura.com

Attorneys for Plaintiff
Sustainable Ranching Partners, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSTAINABLE RANCHING PARTNERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BERING PACIFIC RANCHES LTD., et al., <br><br> Defendants. | Case No.: 17-cv-02323-JST <br><br> OPPOSITION TO DEFENDANTS' MOTION TO DISMISS <br><br> DATE: September 21, 2017 <br> TIME: 2:00 p.m. <br> DEPT: Courtroom 9 |

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Accompanying Documents: Declaration of C. Donati

DATE: September 21, 2017
TIME: 2:00 p.m.
DEPT: Courtroom 9

# TABLE OF CONTENTS

Introduction ........................................................................................... 1

Background Facts ................................................................................... 3

Discussion .............................................................................................. 6

    A.    The Exercise Of Personal Jurisdiction Over Harvie And BPR Is Appropriate In This Case ............................................................ 6

        1.    Prong 1 - Purposeful Availment/Purposeful Direction ....... 6

            a.    Contract Analysis/Purposeful Availment ............. 7

            b.    Tort Analysis/Purposeful Direction .................... 8

            c.    Conclusion - Prong 1 ........................................ 9

        2.    Prong 2 - Suit Arising Out of Defendant's Forum-Related Activities ...................................................................... 10

        3.    Prong 3 - Fairness and Reasonableness ........................ 10

        4.    Conclusion: Prongs 1-3 .............................................. 11

    B.    California Is Likewise The Most Convenient Forum For This Dispute While The Northern District Itself Is A Proper Venue ..... 11

        1.    The Northern District Is A Proper Venue. .................... 12

        2.    The Northern District Is A Convenient Venue. ............. 13

    C.    Defendants' Attach Of Each Of The Causes Of Action Lacks Merit. .... 14

        a.    COA 1 - Declaratory Relief ....................................... 15

        b.    COA 2 - Breach of Contract ...................................... 16

        c.    COA 3 - Negligence ................................................. 17

        d.    COA 4 - Fraud ........................................................ 18

        e.    COA 5 - Unjust Enrichment ...................................... 18

        f.    COA 6 - Indemnity .................................................. 19

        g.    COA 1 - Accounting ................................................ 19

| | | |
|---|---|---|
| D. | If This Court Believes The FAC Is Deficient In Any Way, Leave To Amend Is Requested | 20 |
| Conclusion | | 20 |

OPPOSITION                                                    Case No.: 17-cv-02323-JST

I.      U.S. Supreme Court

Burger King Corp. v. Rudzewicz,                                    7
471 U.S.462 (1985)

Burlington Northern R.R. Co. v. Ford,                            12
504 U.S. 648 (1992)

Calder v. Jones,                                                  8
465 U.S. 783 (1984)

MedImmune, Inc. v. Genentech, Inc.,                             15
549 U.S. 119 (2007)

Piper Aircraft Co. v. Reyno,                                     1
454 U.S. 235 (1981)

Wilton v. Seven Falls Co.,                                      15
515 U.S. 277 (1995)

II.     Ninth Circuit

A.J. Industries, Inc. v. U.S.D.C.,                              13
503 F.2d 384 (9th Cir. 1974)

Barker v. Riverside County Office of Ed.,                       15
584 F.3d 821 (9th Cir. 2009)

Caltex Plastics, Inc. v. Lockheed Martin Corp.,                 14
824 F.3d 1156 (9th Cir. 2016)

CollegeSource, Inc. v. AcademyOne, Inc.,                         6
653 F.3d 1066 (9th Cir. 2011)

Commodity Futures Trading Comm'n v. Savage,                     13
611 F.2d  270 (9th Cir. 1979)

Dole Food Co. v. Watts,                                          8
303 F.3d 1104 (9th Cir. 2002)

Easter v. American West Financial,                              7
381 F.3d 948 (9th Cir. 2004)

McCalden v. California Library Ass'n,                           17
955 F.2d 1214 (9th Cir. 1990)

Picot v. Weston,                                                 6
780 F.3d 1206 (9th Cir.  2015)

Schwarzenegger v. Fred Martin Co.,                            1, 6
374 F.3d 797 (9th Cir. 2004)

iii

| | |
|---|---|
| <u>Securities Investor Protection Corp. v. Vigman,</u><br>764 F.2d 1309 (9th Cir. 1985) | 12, 13 |
| <u>Semegen v. Weidner,</u><br>780 F.2d 727 (9th Cir. 1985) | 18 |
| <u>Strom v. United States,</u><br>641 F.3d 1051 (9th Cir. 2011) | 14 |
| <u>United States v. Washington,</u><br>759 F.2d 1353 (9th Cir. 1985) | 15 |

III.    Other Circuits

| | |
|---|---|
| <u>Ackerman v. Northwestern Mut. Life Ins. Co.,</u><br>172 F.3d 467 (7th Cir. 1999). | 17 |
| <u>Bates v. C & S Adjusters, Inc.,</u><br>980 F.2d 865 (2nd Cir. 1992) | 12 |
| <u>Bussessur v. Indiana Univ. Bd. of Trustees,</u><br>581 F.3d 599 (7th Cir. 2009) | 12 |
| <u>First of Mich. Corp. v. Bramlet,</u><br>141 F.3d 260 (6th Cir. 1998) | 12 |
| <u>Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority,</u><br>103 F.3d 1165 (3rd Cir. 1997). | 12 |
| <u>Heller Financial, Inc. v. Midwhey Poweder Co.,</u><br>883 F.2d 1286 (7th Cir. 1989) | 13 |
| <u>Henry v. Dayton Village, Inc.,</u><br>42 F.3d 89 (2nd Cir. 1994) | |
| <u>Jenkins Brick Co. v. Bremer,</u><br>321 F.3d 1366 (11th Cir. 2003) | 12 |
| <u>Lewis v. ACB Business Services, Inc.,</u><br>135 F.3d 389 (6th Cir. 1998) | 13 |
| <u>Ranza v. Nike, Inc.,</u><br>793 F.3d 1059 | 6 |
| <u>Rescuecom Mediacom Southeast LLC v. Google, Inc.,</u><br>562 F.3d 123 (2nd Cir. 2009) | 13 |

IV.    <u>Federal District Court Cases</u>

| | |
|---|---|
| <u>Atkins v. Calypso Systems, Inc.,</u><br>2015 WL 585 6881 (D. Az. 2015) | 1 |
| <u>Bohura v. Backus Hosp. Med Benefit Plan,</u><br>390 F.Supp.2d 957 (C.D. Cal. 2005) | 2 |

OPPOSITION                                      Case No.: 17-cv-02323-JST

*Britz Fertilizers, Inc. v. Nationwide Agribusiness Ins. Co.,*
2013 WL 5519605 (E.D. Cal. 2013) ............................................................ 15

*Johnson v. Long Beach Mortgage Loan Trust 2001–4,*
451 F.Supp.2d 16 (D.D.C.2006) ................................................................. 7

*Miracle v. NYP Holdings, Inc.,*
87 F.Supp.2d 1060 (D. Hi. 2000) ........................................................ 2, 13

*Nordby Construction, Inc. v. American Safety Indem. Co.,*
2015 WL 1263389 (N.D. Cal 2015) ........................................................... 15

*Progressive Cas. Ins. Co. v. Delaney,*
2014 WL 6388782 (D. Nev. 2014) .............................................................. 15

*Rodgers v. Stater Bros. Markets,*
2017 WL 2268884 (S.D. Cal. 2017) ............................................................ 2

*Seneca Ins. Co., Inc. v. Strange Land, Inc.,*
2014 WL 7336208 (D. Nev. 2014) .............................................................. 15

V.      CA State Law

*Brea v. McGlashan,*
3 Cal.App.2d 454 (Cal. 1934) .................................................................... 19

*Civic Western Corp. v. Zila Industries, Inc. ,*
66 Cal.App.3d 1 (Cal (1977) ...................................................................... 19

*Fleet v. Bank of America N.A,*
229 Cal.App.4th 1403 (Cal. 2014) ............................................................ 10

*Kritzer v. Lancaster,*
96 Cal.App.2d 1 (Cal. 1950) ...................................................................... 16

*Kritzer v Tonkin Construction Co. v. County of Humboldt,*
188 Cal.App.3d 828 (Cal. 1987) ................................................................ 19

*Lectrodryer v. SeoulBank,*
77 Cal.App.4th 723 (Cal. 2000) ................................................................ 18

*Peterson v. Cellco Partnership,*
164 Cal.App.4th 1583 (Cal. 2008) ............................................................ 18

*Souza & McCue Const. Co. v. Superior Court,*
57 Cal.2d 508 (Cal. 1962) .......................................................................... 16

*Warner Constr. Corp. v. City of Los Angeles,*
2 Cal.3d 285 (Cal. 1970) ............................................................................ 16

*Wunderlich v. State ex rel. Department of Public Works,*
65 Cal.2d 777 (Cal. 1967) .......................................................................... 16

1

VII.   <u>Fed Statues/Rules</u>

2   28 U.S.C. § 1391                                                                12

3   28 U.S.C. § 1404                                                                12

4   28 U.S.C. § 1406                                                                12

5   FRCP 9                                                                          18

6   FRCP 12                                                                         14

7   FRCP 15                                                                         19

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION                                                    Case No.: 17-cv-02323-JST

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff Sustainable Ranching Partners, Inc. ("Sustainable") opposes the Motion to Dismiss filed by Defendants Bering Pacific Ranches, Ltd. ("BPR") and Patrick Harvie ("Harvie") as follows:

Introduction

This matter is a business dispute regarding the sale of Alaskan grass fed cattle intended to be shipped and sold in California.  Significantly, the core terms of the failed agreement between the parties were negotiated in California with performance of the contract contemplated in California with all operations overseen by California residents.  As detailed in the First Amended Complaint ("FAC") filed in this matter [Dkt No. 16], the gravamen of the dispute is that Harvie, a Canadian resident who affirmatively solicited and met with Plaintiff in California regarding the sale of the cattle, made material misrepresentations while in California regarding the cattle and the slaughter/harvesting of them, causing Plaintiff to incur and pay unnecessary and needless fees and costs.

In arguing that California is the wrong venue for this suit, Defendants' motion improperly requests that this Court disregard the allegations pled in the FAC confirming the existence of personal jurisdiction while offering no facts to rebut any of the core allegations confirming Harvie's purposeful availment of California law.  Harvie's request that this Court disregard uncontroverted allegations regarding jurisdiction is improper as all allegations are to be accepted as true.  See Atkins v. Calypso Systems, Inc., 2015 WL 585 6881 (D. Az. 2015), citing Schwarzenegger v. Fred Martin Co., 374 F.3d 797 (9th Cir. 2004) and also holding conflicts between parties in affidavits are to be resolved in plaintiff's favor.  As substantial uncontroverted allegations have been pled to confirm that personal jurisdiction exists, Defendants' attack of personal jurisdiction falls short.[1]

Meanwhile, since a strong presumption exists in favor of a plaintiff's chosen forum for commencing a suit, Defendants face a high burden of demonstrating that a more appropriate venue exists for this matter.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 265-266 (1981).  Generally, given that the convenience of non-party witnesses is considered the most important consideration in any

---

[1] As a precaution, the Declaration of Chris Donati (CEO of Plaintiff) is filed herewith to offer additional facts regarding why the exercise of specific jurisdiction over Defendants is reasonable and appropriate.

forum motion, a party seeking to change the forum must identify witnesses it intends to call, the anticipated testimony and the reasons why the present forum would present a hardship.  Rodgers v. Stater Bros. Markets, 2017 WL 2268884 (S.D. Cal. 2017), citing Bohura v. Backus Hosp. Med Benefit Plan, 390 F.Supp.2d 957, 963 (C.D. Cal. 2005).  Of significance, the inconvenience to a defendant of having to litigate in a foreign forum is irrelevant.  See Miracle v. NYP Holdings, Inc, 87 F.Supp.2d 1060, 1073 (D. Hi. 2000), holding that the fact that the venue is inconvenient to the defendant is irrelevant as Section 1404(a) is not intended to simply shift the inconvenience to the plaintiff.

In this case, Defendants' venue-based challenges and efforts to have this matter transferred to Alaska (or dismissed outright) are misguided as no meaningful effort has been undertaken to meet the standard set forth above.  Of significance, Defendants offer no affidavits identifying witnesses that would be inconvenienced by this suit proceeding forward in this venue.  On this basis alone, Defendants' challenge as to the venue should be denied based on burden alone.

As a practical matter, Defendants cannot meet their burden regarding this issue as all key witnesses reside in California while none, including Defendants themselves, reside in Alaska.  Dec. of C. Donati filed herewith.  Given this, California (and the Northern District) are the most convenient forum to adjudicate this dispute while Alaska is a patently inconvenient forum for everyone.

The balance of Defendants' motion, directed to challenging the merits of Plaintiff's causes of action, lacks merit.  As reflected in the FAC, the thrust of Plaintiffs' suit is that Harvie misled Plaintiff in connection with various aspects of the cattle business, resulting in expenditures by Plaintiff far in excess of what had been represented.  While the parties attempted to memorialize their transaction in a written contract, the brevity of the contract reflects and confirms that many details were not captured in the document itself such that, if material terms are honestly disputed, a meeting of the minds as to all necessary terms may not exist.  Given these circumstances, Plaintiff has pled both contract-based and tort-based claims.  Depending on discovery, these claims will likely be narrowed as the case progresses.

For the reasons set forth herein, it is respectfully submitted that Defendants' motion be

1    denied.  Alternatively, to the extent this Court believes the motion has merit, request is made for

2    leave to amend.

3                                             Background Facts

4           BPR and/or Harvie are the owners of cattle residing in Alaska along with some related rights

5    and capital improvements needed to maintain and slaughter/harvest the cattle.  Chris Donati is a

6    principal and CEO of Sustainable.  Donati resides in Napa, California.  FAC, ¶ 6.

7           Beginning in or around 2015, Defendants directed intermediaries who reside in California,

8    to solicit California ranchers regarding the purchase of the subject cattle and the Cattle Business.

9    Through these intermediaries that Harvie directed, contact was ultimately made with Donati in

10   Napa regarding the Cattle Business.  FAC, ¶ 7; Declaration of Chris Donati, ¶ 3.[2]

11          At that time, it was represented to Donati by the intermediaries that Defendants were

12   interested in transacting business in California regarding the subject cattle including, but not limited

13   to, the sale of individual cattle.  Defendants directed the efforts of the California intermediaries in

14   order to market the Cattle Business in California.  FAC, ¶ 7; Dec. of C. Donati, ¶ 3.

15          Harvie's motivation and intent of directing these marketing and solicitation efforts in

16   California was based on the fact that grass fed cattle constitute "specialty meat."   As demand in

17   California for "specialty meat" such as grass fed cattle is high, Harvie actively solicited California

18   ranchers and directed his efforts to market the subject cattle in California in order to bring the meat

19   to market in California.  Dec. of C. Donati, ¶ 3.

20          Between 2015 and 2016, Defendants and Donati had extensive conversations and

21   discussions regarding the Cattle Business.  These discussions included a personal visit by Harvie to

22   California during which Harvie met with Donati in Napa and stayed in Napa for approximately one

23   week to, in part, market and sell the Cattle Business.  FAC, ¶ 8, Dec. of C. Donati, ¶ 4.

24          In advance of his trip to California, Harvie indicated that he wanted to view Donati's

25   operations in California, including one of his ranches in Los Molinos and Donati's main office in

26   Woodland.  Harvie's desire to visit both locations was likely motivated by a desire to confirm

27   _____

28   [2] At the time of these negotiations, Sustainable did not yet exist as Donati formed Sustainable as a single asset entity
     intended to acquire BPR once the negotiations progressed.

                                                    3

Donati had the ability to butcher and market the meat in California. During his trip, Harvie visited both locations. Dec. of C. Donati, ¶ 5.

In connection with these discussions in California, Defendants made affirmative assertions regarding the Cattle Rights, including, but not limited to, the size of the herd, the makeup of the herd, the operations of the on-site facilities and functionality thereof, the oversight and management of the Cattle Business by Harvie, and the ability to butcher, transport, treat, harvest and distribute the cattle (collectively "Representations"). FAC, ¶ 9; Dec. of C. Donati, ¶ 6.

Based in and in reliance on the validity of the Representations, Donati incorporated Sustainable, a California corporation with its main office in California. Donati formed Sustainable as a single asset entity intended to acquire and own BPR. Decl. of C. Donati, ¶ 7.

Donati, through Sustainable, proceeded to enter into a written agreement in November 2016 with Harvie ("Agreement"). Per the Agreement, which incorporates fully an earlier Letter of Intent dated August 2, 2016 ("LOI"), and in reliance on the Representations, Donati agreed to acquire BPR itself (and not simply its assets) via a stock sale and assumption of debt collectively valued at roughly $10,000,000. In accordance with the Agreement, Plaintiff agreed to pay sums to Defendants in order for Defendants to operate the Cattle Business and pay expenses needed to do so so as to have the cattle delivered to California. FAC, ¶¶ 10-11; Dec. of C. Donati, ¶¶ 7-8.

In seeking to acquire BPR, Sustainable intended to operate BPR out of California such that BPR's principal place of business would be California. Per the agreement, Harvie agreed that Sustainable, based in California, owned and controlled BPR. Dec. of C. Donati, ¶ 8.

Per the agreement reached by the parties, Sustainable was under no obligation to pay Harvie any up front money. Rather, Sustainable, through BPR, agreed to pay Harvie $500 per cow based on the sale of the specialty meat in California. Harvie, therefore, had a direct interest in all California sales of the cattle harvested in Alaska as he was only paid if and when the cattle were transported and delivered in California, butchered in California with the resulting specialty meat sold in California. Dec. of C. Donati, ¶ 9.

As part of the agreement to acquire BPR, Harvie also agreed to manage the Subject Cattle at the direction of Donati and Sustainable in California. As part of his management, Harvie submitted

all invoices for payment in California.  Harvie also agreed to accept a management fee that was paid to him from California.  Dec. of C. Donati, ¶ 10.

BPR has no employees and no workers residing on the Aleutian Islands or anywhere in Alaska.  Given this, workers residing in California and other Western States traveled to the Islands to herd the cattle and prepare them for shipment to California.  Dec. of C. Donati, ¶ 11, Exhibit A. Of significance, none reside in Alaska as all workers were seasonal and traveled to Alaska from other locations.  Id.

Donati's concerns regarding the transaction arose immediately as the cost to butcher and transport the cattle to California seemed excessive and contrary to Harvie's representations.  Based in part, on these concerns, Donati sent two California residents with whom he had worked in the past - Wayne Snyder and Davin Lower - to the Islands to manage the situation.  Both Mr. Snyder and Mr. Lower are familiar with the concerns Donati had regarding the business operation and can offer testimony regarding them.  Dec. of C. Donati, ¶ 12.

In this case, Plaintiff contends that Defendants breached the Agreement and corresponding fiduciary duty owing to Plaintiff by, inter alia, misrepresenting the number of cattle, the scope and extent of the infrastructure needed to operate the Cattle Business, the ability to transport the cattle, the functionality of improvements and equipment and the ability to have employees and independent contractors to understand the necessary functions to maintain and develop the cattle operation (collectively "Misrepresentations").  FAC, ¶ 12.

Separate and apart from the Misrepresentations, Plaintiff contends in this case that Defendants violated the fiduciary duty owed to Plaintiff by, inter ala, improperly incurring expenses and/or paying vendors in order to divert money to Harvie and his family and friends, thereby committing fraud in connection with the Cattle Business for Defendants' benefit.  By virtue of the Misrepresentations and self-dealing as alleged herein, Plaintiff has sustained damages by permitting Defendants to improperly incur costs and expenses in excess of $1,800,000 under the pretext that the sums incurred were necessary wand warranted.  FAC, ¶ 13.

///

///

Discussion

A.       The Exercise Of Personal Jurisdiction Over Harvie And BPR Is Appropriate In This Case.

In responding to a motion to dismiss for lack of personal jurisdiction, a plaintiff need only

make a prima facie showing of jurisdictional facts.  Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir.

2015).  Uncontroverted allegations in the Complaint must be taken as true.  CollegeSource, Inc. v.

AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011).  Meanwhile, all factual disputes are

resolved in favor of plaintiff.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9h

Cir. 2004).

Specific jurisdiction exists when a case arises out of or relates to the defendant's contacts

with the forum.  Ranza v. Nike, Inc., 793 F.3d 1059, 1068.[3]  As set forth in Defendants' Motion, a

Court adjudicating whether specific jurisdiction exists must analyze and weigh the following three

(3) prongs:

1.       Whether the non-resident defendant purposefully either (a) directed his activities or consummated some transaction with the forum or resident thereof; or (b) performed some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2.       Whether the claim is one which arises out of or relates to the defendant's forum-related activities; and

3.       Whether the exercise of jurisdiction comports with fair play and substantial justice so as to be reasonable.

Picot, supra, 780 F.3d. at 1211-1212

Under this analysis, the Plaintiff has the burden of proving Prongs 1 and 2 while the

Defendant has the burden of proving Prong 3.  Id.  As set forth herein, all prongs weigh in favor of

Plaintiff.

1.       Prong 1 - Purposeful Availment/Purposeful Direction.

For claims sounding in contract, courts evaluating Prong 1 consider and evaluate whether a

defendant has purposefully availed himself of the privilege of conducting activities within the forum

state to invoke the protections of its laws.  Picot, supra.  For claims sounding in tort, generally look

---

[3] As Plaintiff is presently unaware of any factual basis for general jurisdiction, this type of jurisdiction is not addressed herein.

OPPOSITION                                                          Case No.: 17-cv-02323-JST

to whether the defendant has purposefully directed actions at the forum state.  Id.   In either instance, the proper focus is on the relationship among and between the Defendant, the forum and the litigation.  See Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

a.   Contract Analysis/Purposeful Availment

Contracting parties who "reach out beyond one state to create continuing relationships and obligations with citizens of another state" generally have "purposefully availed" themselves of benefits and protections under another state's laws.  Burger King Corp. v. Rudzewicz, 471 U.S.462, 474 (1985).  For example, where a nonresident lender makes a loan secured by property in the forum state, the lender is subject to personal jurisdiction in the forum since nonresident lenders rely on forum law to protect their interests and receive payments from forum residents such that the lenders have "significant contact with the forum."  Easter v. American West Financial, 381 F.3d 948, 961 (9th Cir. 2004).  An income stream emanating from a forum state, therefore, demonstrates and confirms that a defendant has purposefully availed themselves of the privilege of doing business in the forum.  Id. at 961, n.7; see also Johnson v. Long Beach Mortgage Loan Trust 2001–4, 451 F.Supp.2d 16 (D.D.C.2006), holding specific jurisdiction was supported where the defendant held a security interest in property located in the forum, took assignment of the mortgage note there and drew a revenue stream from the mortgage payments.

In this case, Harvie purposefully availed himself of California in multiple ways, including the following:

- Marketing the cattle in California by directing intermediaries to solicit California ranchers given the California marketplace for specialty meat;

- Traveling to and meeting with Donati in California to inspect his California operations and negotiate terms;

- Reaching an agreement that provides for BPR to be owed and operated by California residents;

- Transporting cattle to California to be butchered and sold while agreeing to paid out of the California sales of the specialty meat

- Agreeing to manage cattle operations on behalf of and at the express direction of

California residents with payments made for services from California.

By virtue of these facts, Harvie's purposeful availment of California is substantial. But for California and the market that exists in California for specialty meat, no deal would have been reached with the parties. As Harvie desired and intended to sell the cattle in California, his contacts with California are numerous and substantial.

The caselaw Harvie relies upon in his motion is inapposite as none of the cases deal with the substantial contacts with a forum state that exist in this case. Given this, Prong 1 as to the contract-based claims weighs in favor of Plaintiff.

        b.     <u>Tort Analysis/Purposeful Direction</u>

With respect to intentional torts, purposeful availment is analyzed under the "effect" test, derived from <u>Calder v. Jones</u>, 465 U.S. 783 (1984). In <u>Calder</u>, the Supreme Court determined that California courts properly exercised jurisdiction over an editor and a reporter who caused a defamatory article about a California resident to be published in Florida and circulated in California, on the ground that the tortious conduct was "expressly aimed" at the forum state in which harm occurred. <u>Id.</u> at 788–89. The "effects" test, therefore, requires a plaintiff to allege that a defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. <u>Dole Food Co.</u>, <u>supra</u>, 303 F.3d at 1111.

In this case, Harvie's contacts with California were purposeful and deliberate. Unlike in Alaska (or Canada) a marketplace exists in California for specialty meat such that grass fed cattle can be sold at a premium. Based on this marketplace, Harvie marketed and solicited California ranchers.

When Donati expressed an interest, Harvie directed his efforts on him, ultimately traveling to California to personally meet and discuss the sale of the cattle. The trip to California included visits to Donati's local ranch and headquarters.

In courting Donati in California, Harvie made material representations regarding the cattle and its operations while offering to act as an agent for Sustainable in managing the operations. In so doing, Harvie actively and purposefully sought to get paid from California for work performed for a California principal.

The caselaw Harvie relies upon in his motion is inapposite as none of the cases deal with the substantial actions Harvie directed to the forum state. Given this, Prong 1 as to the contract-based claims weighs in favor of Plaintiff.

c.    Conclusion - Prong 1

Broadly speaking, a substantial relationship exists between Defendants, California and this litigation. Harvie marketed the Subject Cattle for sale in California. He directed California individuals to solicit California ranchers regarding his business, intending for the cattle ultimately to be shipped to California for sale. Indeed, Harvie expressly aimed for a California buyer, knowing that there was a robust California market for beef from grass-fed cattle which did not exist in Canada.

Once Donati expressed an interest, Harvie began to contact him directly in California to discuss the business. As the discussions progressed, Harvie traveled to California to meet with Donati to discuss the business. In so doing, Harvie performed due diligence in California to confirm that Donati had the means to market and sell the meat in California while making material representations while in California regarding the business.

The parties ultimately agreed on a stock sale in which BPR agreed to be acquired by Sustainable, the latter a California corporation with its headquarters in California. As Sustainable intended to operate BPR out of its California headquarters, BPR necessarily agreed that its principal place of business would become California.

Performance of the contract was contemplated in California. All bills and invoices were paid out of California. Harvie agreed to manage the operations and received an income stream from payments made to him from California. The operations of BPR were operated and run by workers residing in California. Both Harvie and BPR agreed that residents of California would manage and oversee the company from California, and that all expenditures would be approved of and paid out of California.

Moreover, Harvie maintains a financial interest in beef butchered and sold in this state. The cattle at issue here were to be slaughtered in Alaska, then shipped to California where they would be butchered and stored and the beef ultimately sold within this state where it could command a

high price in light of the California consumer demand for beef from grass-fed cattle. BPR and Harvie were to be paid from the proceeds of the sales of the beef. Indeed, presently, frozen beef from this venture is stored in California, awaiting sale. Harvie anticipates receiving proceeds from the future sale of the stored beef.

Based on these facts, substantial allegations have been made that Defendants purposefully directed their efforts in California and purposefully availed themselves of California law. Plaintiff, therefore, has readily met its burden.

2. _Prong 2 - Suit Arising Out of Defendant's Forum-Related Activities._

This suit arises largely out of Defendants' activities in California. Per above, these activities include the marketing of the cattle in California, the directing of intermediaries in California to market and solicit California-based ranchers, the negotiations that incurred between the parties in California, Harvie's inspection of Donati's California-based operations as part of his due diligence and the final agreement between the parties.

Defendants' forum related activities continued in connection with the performance of the agreement. By virtue of the agreement reached, BPR's headquarters were to be based in California. Harvie's agreement to manage the operations and be paid from California confirm that he acted as an agent and fiduciary for California residents.

BPR cattle were transported to California, stored in California, butchered in California and ultimately sold in California to California consumers. Defendants had a direct, pecuniary interest in these California-based activities, both by virtue of ownership of the cow and the fact that payment was neither due nor owing until the special meat was sold in California.

As all of these California-related activities are at issue in this suit, Plaintiff has readily met its burden regarding this prong.

3. _Prong 3 - Fairness and Reasonableness_

Defendants, which bear the burden of proof as to this prong, cannot meet their burden as it is fair and reasonable for this suit to proceed in California.

By marketing the cattle in California both directly (via a personal visit over several days) and indirectly (through intermediaries targeting local ranchers) Harvie deliberately and consciously

chose to seek the benefits of conducting business in California. Harvie's decision to do so is patent and obvious - grass fed cattle have a higher value in California given that consumers will pay more for specialty meat.

Per the agreement, Sustainable acquired and controlled BPR itself (and not its assets). BPR's operations, therefore, were managed, directed and controlled out of California.

In agreeing to ship the BPR cows to California with payment only to be made once sold in California, the entire agreement was predicated on the ability to market and sell the special meat harvested from the cattle here in California. BPR and Harvie, therefore, had a direct, pecuniary interest in all of BPR's California operations, including the sales of the specialty meat in California.

In agreeing to manage the cattle operations for BPR for the benefit of Plaintiff, Harvie also necessarily agreed to become Plaintiff's agent pursuant to which he individually agreed to management and direction from a California principal. In so doing, Harvie expressly agreed to be paid from California for work intended to benefit a California client.

Based on the totality of the California-based activities, it is both fair and reasonable to adjudicate this dispute in California. By purposefully and deliberately coming to California to market sell the cattle coupled with the agreement to retain ownership of the cattle in California and be paid out of California sales of the meat, it is logical, reasonable and fair for this matter to proceed in California.

4.     Conclusion: Prongs 1-3

A clear and strong nexus exists between this suit, the Defendants and the state of California. While the product being harvested currently reside outside of California, the only reason for the transaction giving rise to this dispute is the California market. California-based activities, therefore, are at the core of this dispute. The exercise of personal jurisdiction in California, therefore, comports with fairness and due process.

B.     California Is Likewise The Most Convenient Forum For This Dispute While The Northern District Itself Is A Proper Venue.

Apart from the jurisdictional arguments, Defendants' separately argue that this matter should not proceed forward in this Court based on venue and convenience considerations. Neither

argument has merit.

Unlike jurisdiction, venue is premised on administrative considerations designed to reflect equity or expediency in resolving disputes. Burlington Northern R.R. Co. v. Ford, 504 U.S. 648, 650-51 (1992). Proper venue, therefore, is simply based on a convenient or fair forum, such as where the cause of action arose. Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1313-1314 (9th Cir. 1985).

Two distinct grounds exist upon which venue may be challenged such that a matter can be transferred or dismissed - when the selected venue is improper or inconvenient. See 28 U.S.C. § § 1404, 1406. Neither circumstance applies in this case.

1.    The Northern District Is A Proper Venue.

A suit filed in an improper venue (i.e., wrong court) may be either transferred or dismissed. 28 U.S.C. § 1406.  Where subject matter jurisdiction exists based on diversity jurisdiction (as is true in this case), the proper venue is governed by 28 U.S.C. § 1391(a), which provides as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
> (1)  a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3)  a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

In evaluating prong (a)(2), tort actions are evaluated based on where the parties acted and/or were injured while contract actions are based on where the negotiations occurred and where performance was intended. Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2nd Cir. 1992).  Of significance, if a substantial part of the events occurred in multiple jurisdictions, venue is appropriate in each district. First of Mich. Corp. v. Bramlet, 141 F.3d 260, 264 (6th Cir. 1998).  A plaintiff, therefore, is free to choose the venue when the suit could be brought in multiple districts. Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003).

In this case, and as alleged in the FAC, a substantial part of the events that giving rise to the claim occurred in Napa during the personal meeting between Harvie and Donati. Venue, therefore, lies with this Court.[4] For this reason, this matter is not properly dismissed based on venue.

2.     The Northern District Is A Convenient Venue.

For the convenience of the parties, witnesses and in the interests of justice, a Court may transfer an action. 28 U.S.C. § 1404.

Plaintiff's choice of forum is afforded substantial weight when deciding whether to grant a motion to transfer the case based on convenience. Lewis v. ACB Business Services, Inc., 135 F.3d 389, 413 (6th Cir. 1998). A transfer generally does not lie, therefore, unless the convenience and justice factors weigh heavily in favor of another venue. Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985).

A transfer, therefore, is improper simply because the venue is inconvenient to the defendant as section 1404(a) is not intended to simply shift the inconvenience to the plaintiff. Miracle v. NYP Holdings, Inc, 87 F.Supp.2d 1060, 1073 (D. Hi. 2000). For this reason, the location of the witnesses is the most important factor. A.J. Industries, Inc. v. U.S.D.C., 503 F.2d 384, 389 (9th Cir. 1974).

The moving party has the burden of proving the convenience of the parties and the interests of justice require the transfer of the case to another district. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). To meet this burden, affidavits or declarations identifying key parties and expected testimony are required. Heller Financial, Inc. v. Midwhey Poweder Co., 883 F.2d 1286, 1293 (7th Cir. 1989).

In this case, Defendants have failed to meet their burden as to the convenience of the parties and/or the interests of justice. As to the former, Defendants did not include any affidavits with their motion identifying the location of witnesses and/or their expected testimony. Meanwhile, given the facts and circumstances addressed above confirming the existence of personal jurisdiction based on

---

[4] Admittedly, as Plaintiff's main office is in Yolo County (Woodland) (within the boundaries of the Eastern District of California) this suit could likely have also been brought in the Eastern District of California such that multiple appropriate venues exist. Defendants, however, seek to transfer this case to Alaska, not Sacramento. Regardless, as the core negotiations and misrepresentations, however, occurred in Napa, this District is the more appropriate venue.

OPPOSITION                                         Case No.: 17-cv-02323-JST

Defendants' targeted and directed efforts in California, Defendants cannot meet their burden of demonstrating that the the the interests of justice warrant the transfer of this case to Alaska.

Even if Defendants had attempted to meet their burden as to the convenience of the witnesses with admissible evidence, their efforts would have fallen short. As detailed herein, the majority of the activities at issue occurred in California. Individuals with knowledge of these events, therefore, reside in and are available in California.

As for the Alaskan operations, no workers reside there as all traveled in from other locations to work there for limited periods until returning home. These workers reside predominately in the Western states with most residing in California. See Dec. of C. Donati, Ex. A.

As detailed above and based on concerns regarding the operations Donati sent two California residents with whom he had worked in the past - Wayne Snyder and Davin Lower - to the Islands to manage the situation. Both Mr. Snyder and Mr. Lower are familiar with the concerns Donati had regarding the business operation and can offer testimony regarding them. Both reside in California.

The reality is that no key witnesses reside in Alaska while Harvie himself resides in Canada (Alberta province). Given this, proceeding with this suit in Alaska would be convenient to no one and correspondingly inconvenient to everyone.

C.    Defendants' Attack Of Each Of The Causes Of Action Lacks Merit.

As this Court is aware, a motion to dismiss tests the legal sufficiency of pled claims. Strom v. United States, 641 F.3d 1051, 1067 (9th Cir. 2011). A challenge based on FRCP 12(b)(6) is valid only if the Complaint either fails to allege a cognizable legal theory or fails to allege facts to support a cognizable legal theory. Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1159 (9th Cir. 2016).

The Twombly/Iqbal standard requires a complaint to contain sufficient factual allegations to show a plausible claim for relief. Bussessur v. Indiana Univ. Bd. of Trustees, 581 F.3d 599, 603 (7th Cir. 2009). Under this standard, all factual assertions are presumed true. Rescuecom Mediacom Southeast LLC v. Google, Inc., 562 F.3d 123, 127 (2nd Cir. 2009). Meanwhile, all reasonable inferences from the facts alleged are drawn in in plaintiff's favor of whether the

OPPOSITION                                                    Case No.: 17-cv-02323-JST

complaints states a valid claim.  <u>Barker v. Riverside County Office of Ed.</u>, 584 F.3d 821, 824 (9th Cir. 2009).

In this case. the FAC includes the following causes of action:

- COA 1 - Declaratory Relief
- COA 2 - Breach of Contract
- COA 3 - Negligence
- COA 4 - Fraud
- COA 5 - Unjust Enrichment
- COA 6 - Indemnity
- COA 7 - Accounting

In its Motion, Defendants contend that each of these causes of action is flawed and subject to dismissal.  Respectfully, Defendants' global attack of all pled causes of action fails.

a.  <u>COA 1 - Declaratory Relief</u>

A Court has the unique and substantial discretion to declare the rights of the litigants. <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286-287 (1995).  Declaratory relief is available to redress real and substantial adverse legal interests as to a core legal issue.  <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 119, 127 (2007). Declaratory relief should is appropriate when it will serve a useful purpose in clarifying and settling the legal relations in issue.  <u>United States v. Washington</u>, 759 F.2d 1353, 1357 (9th Cir. 1985).

In this case, Plaintiff seeks Declaratory Relief to confirm the rights and obligations of the parties in this case.  As the contract omits several key terms, declaratory relief is needed for this Court to adjudicate the terms of the relationship of the parties, including whether a meeting of the minds existed.

Numerous courts have concluded that declaratory relief is available in disputes regarding contracts. See <u>Nordby Construction, Inc. v. American Safety Indem. Co.</u>, 2015 WL 1263389 (N.D. Cal 2015); <u>Britz Fertilizers, Inc. v. Nationwide Agribusiness Ins. Co.</u>, 2013 WL 5519605 (E.D. Cal. 2013); <u>Seneca Ins. Co., Inc. v. Strange Land, Inc.</u>, 2014 WL 7336208 (D. Nev. 2014); <u>Progressive Cas. Ins. Co. v. Delaney</u>, 2014 WL 6388782 (D. Nev. 2014).  Given this,

Defendants' contention that declaratory relief is unnecessary because there is a separate breach of contract count is belied by caselaw concluding otherwise.

Of significance, Defendants' attack of every cause of action pled in this matter, including the breach of contract cause of action, demonstrates and confirms why declaratory relief is needed in this case. Plaintiff has come to this Court seeking clarity regarding the relationship between the parties. Given this express intent coupled Defendants' attack of all pled claims, the need for declaratory relief is patent and straight-forward. On this basis, Plaintiff submits that Defendants' attack of this cause of action fails.

b.    COA 2 - Breach of Contract

The elements of a breach of contract action are simple as set forth in Defendants' motion - (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach and (4) damages.

In attacking this cause of action, Defendants contend that Plaintiff has not pled the terms that Defendants have breached. In so doing, Defendants ignore that the thrust of this suit is that Harvie both misled Plaintiff into entering into the contract resulting in additional costs and that he failed to perform his management duties as agreed to.

As to the former claim, a party who is misled by incorrect representations may recover in a contract action for extra work or expenses necessitated by the conditions being other than as represented. Souza & McCue Const. Co. v. Superior Court, 57 Cal.2d 508, 510 (Cal. 1962); Warner Constr. Corp. v. City of Los Angeles, 2 Cal.3d 285, 293-294 (Cal. 1970); Tonkin Construction Co. v. County of Humboldt, 188 Cal.App.3d 828, 832 (Cal. 1987). Meanwhile, a party that is misled into entering into a contract is excused from having to perform under it. Wunderlich v. State ex rel. Department of Public Works, 65 Cal.2d 777 (Cal. 1967).

In this case, Plaintiff contends it was misled into entering into Exhibit A to the FAC based on false representations as to the size of the herd, the makeup of the herd, the operations of the on-site facilities and functionality thereof, his oversight and management of the business and the ability to butcher, transport, treat, harvest and distribute the cattle here in California. FAC, ¶ ¶ 9, 12. Based on the falsity of these representations (all of which were incorporated into the Agreement), Plaintiff contends it sustained damages and is excused from having to perform under

the contract. FAC, ¶ ¶ 20-23.

Separate and apart is the fact that Plaintiff entered into a contract with Harvie to manage the cattle. FAC. ¶ 9. Plaintiff contends that Harvie breached this management agreement by, inter alia, improperly incurring expenses and/or paying vendors in order to divert money to Harvie along with family and friends, thereby committing fraud in connection with the Cattle Business for Defendants' benefit. FAC, ¶ ¶ 13, 20-23.

Based on these allegations, Plaintiff has properly pled a breach of contract cause of action. To the extent this Court believes otherwise, leave to amend is requested.[5]

c.    COA 3 - Negligence

A Complaint may include alternate, inconsistent claims for relief. McCalden v. California Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990). Given this, a plaintiff may properly plead inconsistent theories, even within the same claim. Henry v. Dayton Village, Inc., 42 F.3d 89, 95; Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority, 103 F.3d 1165, 1175 (3rd Cir. 1997).

In attacking the negligence (and fraud) causes of action, Defendants rely upon the economic loss rule and the view that economic damage arising from a contract are not recoverable via a tort cause of action. Defendants' reliance on this rule at the pleadings stage is improper.

As a threshold issue, the tort claims alleged in the FAC are premised on the absence of an enforceable contract. The claim for negligence, therefore, assumes that no enforceable contract exists.

Meanwhile, Plaintiff has separately pled physical injuries to tangible property (i.e., damages to the improvements and the cattle that fall outside of the economic loss rule.

Broadly speaking, at the pleadings stage, inconsistent theories are proper and acceptable. If no meeting of the minds was reached, no contract exists. If no contract exists, tort claims are available. Accordingly, the tort-based claims are properly pled. If this Court believes otherwise, leave to amend is requested.

---

[5] These same contentions serve as the basis for the fraud claims, which Defendants challenge on basis of specificity. To the extent this Court agrees, leave to amend is requested.

d.      COA 4 - Fraud

Defendants attack the fraud cause of action based on (1) the economic loss rule; and (2) the requirement of specificity per FRCP 9.

As to the former issue, and as noted above, the pleading of inconsistent theories is appropriate and proper.  To the extent no enforceable contract exists, a fraud claim is available.

As to FRCP 9, the specificity requirement is intended to ensure that the plaintiff has conducted a precomplaint investigation that is sufficient in depth.  Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999).  This requirement is intended to be specific enough to give a defendant notice of the particular misconduct at issue.  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

While the parties agree that fraud must be pled with specificity, an apparent disagreement exists regarding whether the FAC meets this standard. The FAC includes allegations as to specific representations that are false.  FAC, ¶¶ 9-13.[6]  These allegations are specific as to the representations made, who made them and when they were made.

It is respectfully submitted, therefore, that the FAC complies with Rule 9.  To the extent this Court disagrees, leave to amend is requested.

e.      COA 5 - Unjust Enrichment

Under California law, the elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another.  Peterson v. Cellco Partnership, 164 Cal.App.4th 1583 (Cal. 2008), citing Lectrodryer v. SeoulBank, 77 Cal.App.4th 723, 726 (Cal. 2000).  Despite Defendants' position, it is a stand alone cause of action existing under California law.

Defendants' attack of this cause of action appears to be based on the view that this case is solely a contract dispute.  Per above, Plaintiff has pled this matter in alternate ways, one of which assumes that no enforceable contract exists (a position Defendants argue).  As alternate, inconsistent pleading is appropriate and warranted, Defendants attack of this cause of action fails.

---

[6] The Declaration of C. Donati filed herewith bolsters these contentions.

### f. COA 6 - Indemnity

The LOI that is incorporated into the agreement provides as follows:

> 9. Harvie shall defend, indemnify, and hold harmless the Purchaser, its officers, directors, stock holders, agents, servants, employees, and, their respective heirs, personal and legal representatives, guardians, successors and assigns, from and against any and all claims, threats, liabilities, taxes, interest, fines, penalties, suits, actions, proceedings, .demands, damages, losses, costs and expenses, including reasonable Attorneys fees and expert fee, and court costs of every kind or nature (collectively "adverse consequences") arising out of, resulting from, or in connection with any material misrepresentation or breach by Harvie of any representation or warranty contained in this agreement or any formal purchase and sale agreement,

FAC, Ex. A, Schedule B.

Per the FAC, several false representations have been identified.  FAC, ¶¶ 9-13.  It is based on these false representations and the damages arising from them that the indemnity claim is based. To the extent this Court believes otherwise, leave to amend is requested.

### g. COA 7 - Accounting

An accounting is an action in equity and may be sought where the accounts are complicated. Civic Western Corp. v. Zila Industries, Inc., 66 Cal.App.3d 1, 14 (Cal. 1977).  A cause of action for accounting requires a showing of a relationship between the plaintiff and the defendant, such a fiduciary relationship, that requires an accounting or a showing that the accounts are so complicated they cannot be determined through an ordinary action at law.  Fleet v. Bank of America N.A, 229 Cal.App.4th 1403 (Cal. 2014), relying on Brea v. McGlashan, 3 Cal.App.2d 454 (Cal. 1934).  A complaint sufficiently states a claim for an accounting, therefore, by alleging that (1) a fiduciary relationship, (2) losses in an amount that cannot be ascertained, and (3) misconduct.  Kritzer v. Lancaster, 96 Cal.App.2d 1, 6-7 (Cal. 1950).

In this case, all necessary allegations supporting a cause of action for accounting have been pled.  To the extent this Court believes otherwise, leave to amend is requested.

### D. If This Court Believes The FAC Is Deficient In Any Way, Leave To Amend Is Requested

When a Court grants a motion to dismissed, leave to amend is routinely afforded.  FRCP 15(a); United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011).  In this case, to the extent that this Court believes the FAC is deficient in any way, leave to amend is requested.

<u>Conclusion</u>

For the reasons set forth herein, it is respectfully submitted that Defendants' motion is properly denied.  To the extent this Court believes otherwise, leave to amend is requested

Dated: August 2, 2017

MORALES FIERRO & REEVES

By:     /s/ William C. Reeves
                   William C. Reeves
                   Attorneys for Plaintiff

OPPOSITION                                                    Case No.: 17-cv-02323-JST