UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSTAINABLE RANCHING PARTNERS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>BERING PACIFIC RANCHES LIMITED and PATRICK HARVIE,<br><br>    Defendants. | Case No. 17-cv-02323-JST<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURSDICTION OR IMPROPER VENUE, GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, AND DENYING MOTION TO TRANSFER**<br><br>Re: ECF No. 24 |

Before the Court is Defendants Bering Pacific Ranches Limited ("BPR") and Patrick Harvie's ("Harvie") (collectively "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2), Improper Venue under Federal Rule of Civil Procedure 12(b)(3), and Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6), or in the Alternative, to Transfer under 28 U.S.C. § 1404(a). ECF No. 24. Plaintiff Sustainable Ranching Partners, Inc. ("SRP") opposes the motion. ECF No. 26. The Court DENIES the motion to dismiss based on personal jurisdiction or improper venue, but GRANTS it without prejudice based on failure to state a claim. The Court DENIES Defendants' motion to transfer.

## I. BACKGROUND

On April 25, 2017, Plaintiff Sustainable Ranching Partners, Inc. ("Plaintiff"), a California corporation with its principal place of business in California,[1] ECF No. 24 at 8, filed this action

---

[1] Defendants attach a copy of the California Secretary of State's website indicating that SRP's place of business is in Woodland, CA. ECF No. 24, Exhibit 1. Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court may properly take judicial notice of materials attached to the complaint and of matters

against Defendants. ECF No. 1. Chris Donati ("Donati"), the principal of SRP, resides in Napa, California. ECF No. 16 at 2. BPR is a Canadian company that operates a cattle ranching operation in the remote Aleutian archipelago. ECF No. 24 at 8-9. Defendant Harvie, BPR's majority shareholder, is a Canadian citizen and resident. Id. at 9.

Plaintiff's operative First Amended Complaint ("FAC"), filed July 2, 2017, alleges that Defendants made misrepresentations during negotiations with Plaintiff regarding Plaintiff's acquisition of Defendants' cattle and related rights and improvements. ECF No. 1. Plaintiff also alleges that Defendants committed fraud by "improperly incurring expenses and/or paying vendors in order to divert money to others." ECF No. 16 at 3. For the purposes of this motion, the Court takes as true the following facts alleged in Plaintiff's FAC. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

In or around 2015, Defendants contacted Donati through an intermediary residing in California. ECF No. 16 at 2. During 2015 and 2016, Donati and Defendants engaged in "extensive conversations and discussions regarding the Cattle Rights . . . over the phone and via mail." Id. During this time, Harvie visited California, met with Donati, and stayed in Napa "for approximately one week . . . in part [to] market and sell the Cattle Business." Id. Throughout the negotiations, Defendants "made affirmative assertions regarding the Cattle Rights, including, but not limited to, the size of the herd, the makeup of the herd, the operations of the on-site facilities and functionality thereof, the oversight and management of the Cattle Business by Harvie, and the ability to butcher, transport, treat, harvest and distribute the cattle." Id. Plaintiff relied on these representations and entered into a written agreement between the parties. Id. The written agreement also fully incorporated a Letter of Intent ("LOI"), dated August 2, 2016. Id.; Ex. A. "Plaintiff agreed to acquire the cattle via a stock sale" and to pay Defendants "to operate the Cattle Business and pay expenses needed to do so." ECF No. 16 at 2.

Following execution of the agreement, "Defendants breached the Agreement and corresponding fiduciary duty" owed to Plaintiff by "misrepresenting the number of cattle, the

---

of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). The Court takes notice of the California Secretary of State's website as a matter of public record.

scope and extent of the infrastructure needed to operate the Cattle Business, the ability to transport the cattle, the functionality of improvements and equipment and the ability to have employees and independent contractors to understand the necessary functions to maintain and develop the cattle operation." Id. at 3. Plaintiff alleges it suffered damages "in excess of $1,800,000" and "is continuing to incur expenses in an effort to mitigate its damages associated with the falsity of the Representations." Id.

Plaintiff asserts seven causes of action: (1) declaratory relief; (2) breach of contract; (3) negligence; (4) fraud; (5) unjust enrichment; (6) indemnity; and (7) an accounting against Defendant Harvie. Id. at 3-6.[2]

On July 19, 2017, Defendants filed this motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, or in the alternative to transfer to the District of Alaska. ECF No. 24.

## II. LEGAL STANDARD

### A. Jurisdiction

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). Absent an evidentiary hearing, the plaintiff need only make a "prima facie showing" of personal jurisdiction. Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Uncontroverted allegations in the plaintiff's complaint must be taken as true." Id. Where there are conflicts between factual statements, they "must be resolved in the plaintiff's favor." Id. (internal quotation marks omitted) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." Id. Because "California's long-arm statute is co-extensive with federal standards, . . . a federal court may exercise personal jurisdiction if doing so comports with federal

---

[2] For purposes of this motion, the Court does not rely on any of the "new 'Background Facts'" Defendants object to on reply. ECF No. 27 at 7, n.2.

constitutional due process." Id. (citing Panavision Int'l L.P. v. Toppen, 141 F.3d 1316, 1320 (9th Cir. 1998)). The relevant question here is whether the nonresident Defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" See Id. at 1015-16 (quoting Schwarzenegger, 374 F.3d at 801)).

There are two types of personal jurisdiction: "general or all-purpose" and "specific or case-linked." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn.8-9 (1984)). When a defendant's affiliations with the forum state are so "continuous and systematic" as to render the defendant "at home" in the state, a court may assert general jurisdiction to "hear any and all claims" against that defendant. Id. SRP does not argue that the Court has general jurisdiction over Defendants. ECF No. 26 at 13.

"Specific jurisdiction, on the other hand, depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 564 U.S. at 919 (internal quotation marks omitted). In contrast to general jurisdiction, specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. (internal quotation marks omitted). The Ninth Circuit has established a "three-prong test for analyzing a claim of specific personal jurisdiction:"

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test." Id. (citing Sher, 911 F.2d at 1361)). If the plaintiff succeeds in doing so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

**B.     Failure to State a Claim**

    **1.     Rule 8(a)(2)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A party may move to dismiss based on the failure to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a motion to dismiss, a pleading must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). For purposes of a motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).

    **2.     Rule 9(b)**

Claims of fraud are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must supply "the circumstances constituting the alleged fraud" with a description "'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).

"[I]ntent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b). Fraud claims must allege "an account of the time, place, and specific content of the false representations as well as the identities

of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); see also Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)). "Plaintiff[s] need not provide every factual detail supporting [their] fraud claim. Instead, a plaintiff must set forth what is false or misleading about a statement, and why it is false." In re GlenFed, Inc. Securities Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp., 927 F. Supp. 1297, 1309 (C.D. Cal. 1996).

**C.    Transfer**

Where venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quotation omitted). It places "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622). In deciding a motion to transfer under § 1404, the court must weigh "a number of case-specific" factors. Id.

> For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000). The moving party bears the burden to show that another district is the more appropriate forum for the action. Id. at 499.

/ / /

## III. DISCUSSION

### A. Specific Jurisdiction

#### 1. Purposeful Availment and Defendants' Forum-Related Activities

Defendants argue that the Court lacks jurisdiction over them.

The first prong of the Ninth Circuit's test for specific personal jurisdiction[3] asks whether the defendant "purposefully direct[ed]" its activities at the forum or "purposefully avail[ed]" itself of the privilege of conducting activities in the forum. Schwarzenegger, 374 F.3d at 802. "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," must be considered "in determining whether the defendant purposefully established minimum contacts within the forum." Burger King, 471 U.S. at 479. "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 473 (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950)). There must be "actions by the defendant *himself* that create a 'substantial connection' with the forum State." Id. at 475 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

Defendants cite Picot v. Weston for the proposition that a "lone transaction, even when accompanied by minor pre-formation meetings or other incidental contacts with the plaintiff in the forum, is insufficient to support personal jurisdiction over an out-of-state defendant." ECF No. 24 at 16; 780 F.3d 1206, 1212 (9th Cir. 2015). That case is distinguishable. In Picot, plaintiffs Picot and Manos and defendant Weston worked together to develop and market an electrolyte for use in hydrogen fuel sells. After Picot and Manos sold the electrolyte technology without telling Weston, Weston claimed that he was entitled to a one-third share of the proceeds under an oral agreement. In response, Picot and Manos sued Weston in California seeking a declaration that no oral agreement was made, and for damages for intentional interference with their sales contract. The district court dismissed the suit for lack of personal jurisdiction, and the Ninth Circuit

---

[3] No party argues that the Court has general jurisdiction over Defendants.

affirmed. Id. at 1209. The Ninth Circuit held that the effects of Weston's actions were "not connected to the forum State in a way that makes those effects a proper basis for jurisdiction." Id. at 1215 (citing Walden v. Fiore, 134 S.Ct. 1115, 1125 (2014)).

Like Weston,[4] BPR's representatives made only short trips to California, but that is where their similarities end. Weston's visits to California were not "envisioned in the initial oral agreement," and "Weston's role in the presentations was relatively small." Id. There was no relationship between Weston's California contacts and either the parties' agreement or Picot's claim:

> Weston's allegedly tortious conduct consists of making statements to Coats (an Ohio resident) that caused HMR (a Delaware corporation with offices in Ohio) to cease making payments into two trusts (in Wyoming and Australia). Weston did all this from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California. In short, "none of [Weston's] challenged conduct had anything to do with [California] itself."

Picot v. Weston, 780 F.3d 1206, 1215 (9th Cir. 2015) (citing Walden, 134 S.Ct. at 1125). By contrast, Plaintiff contends that Defendant's trip to California was for the purpose of soliciting Donati's business and continuing negotiations between the parties, and that Defendant made representations in California that induced Plaintiff to enter into the parties' contract. FAC ¶¶ 7-9; see also Moncrief v. Clark, 238 Cal.App.4th 1000 (Cal. Ct. App. 2015) (holding that "while Moncrief and Clark engaged in a single transaction, Clark targeted Moncrief with the specific purpose of inducing Moncrief's client to finalize the purchase of farm equipment from Texas Hill Farms").

Defendants' reliance on Lil' Man in the Boat, Inc. v. Auk Ta Shaa Discovery, No. 16-cv-01471-JST, 2016 WL 6679558, at *3 (N.D. Cal. Nov. 14, 2016) is likewise unpersuasive. See ECF No. 24 at 17. There, this Court held that a "lone transaction for the sale of one item" is

---

[4] On two occasions, Weston left his Michigan office to travel to California. First, in January 2010, Weston traveled to southern California for approximately two weeks to help Manos set up a demonstration for a potential client Picot had contacted. Second, in June 2010, Weston went to Sacramento at Manos' and Picot's request to help with another demonstration. On both occasions, Manos and Picot compensated Weston for his work and related expenses.

Picot, 780 F.3d at 1210.

insufficient to satisfy the purposeful availment prong. Id. In Lil' Man, however, as well as the cases on which it relies,[5] the jurisdictional analysis centered on one-time transactions that did not establish an ongoing relationship or continued obligations between the parties. Id. The Court held that it lacked jurisdiction because "[t]he seller did not create any 'ongoing obligations' or 'continuing commitments'. . . as the parties were to go their 'separate ways' after the sale." Id. at *2 (citing Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008)).

Here, the Purchaser-Vendor relationship established by the agreement "created 'continuing obligations' between [Defendants] and residents of the forum." Hall v. LaRonde, 56 Cal. App. 4th 1342, 1347 (Cal. Ct. App. 1997) (citing Travelers Health Assn., 339 U.S. at 648). Executing a contract for the sale of cattle that the seller continues to maintain on behalf of the purchaser is fundamentally different than a contract for the sale of, for instance, a boat. The former necessarily creates a continuous course of dealing distinguishable from an agreement after which the seller and purchaser go their separate ways. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) ("[T]he 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents."); Cummins-Allison Corp. v. SBM Co., No. CV 12-00207 HG KSC, 2013 WL 12198835, at *6 (D. Haw. Jan. 28, 2013) (collecting cases).

Defendants also argue that Harvie's visit to California fails to establish purposeful availment because it centered on marketing, and did not culminate in the subsequent agreement between BPR and SRP. ECF No. 24 at 18. They emphasize that "it is indisputable that [Harvie] did not conduct or conclude any business with SRP during the visit, *because SRP did not even exist as a California company at that time.*" Id. (emphasis in original). This argument is not persuasive. Donati was essentially acting as an agent for his to-be-formed corporation. Several courts have held that a plaintiff enterprise may maintain a claim where the defendant engaged in misconduct towards an individual who later formed the enterprise in reliance on the defendant's

---

[5] See Boschetto v. Hansing, 539 F.3d 1011 (9th Cir. 2008); Shisler v. Sanfer Sports Cars, Inc., 146 Cal. App. 4th 1254 (Cal. Ct. App. 2006).

9

preceding representations. See Shepard v. Cal-Nine Farms, 252 F.2d 884, 886 (9th Cir. 1958) (citing Crystal Pier Amusement Co. v. Cannan, 219 Cal. 184 (9th Cir. 1933); Werner v. Xerox Corp., 732 F.2d 580 (7th Cir. 1984); Prime Media Group, LLC v. Acer America Corp., No. 12–cv–05020–BLF, 2014 WL 7225352 (N.D. Cal. Dec. 18, 2014); Zimmerman Ford, Inc. v. Cheney, 271 N.E.2d 682 (Ill. App. Ct. 1971). The Court therefore cannot conclude as a matter of law that no "business was conducted" during Harvie's visit.

Defendants also contend that if BPR initially made contact with Donati through an "unnamed intermediary," the "alleged broker contract would be insufficient." ECF No. 24 at 19 (citing Lil' Man, 2016 WL 6679558, at *4). The Court notes the oddity of Plaintiff failing to provide any indication as to the identity of said intermediary (and its relevance to whether Plaintiff has plausibly stated a claim), but notes also that Defendants do not offer an alternative explanation as to how the initial contact was made. Assuming the first communication with Donati was in fact via a third party, the Court agrees that alone would not be enough to establish minimum contacts. Lil' Man, 2016 WL 6679558, at *4. The circumstances, however, indicate more than a singular contact from a broker or the conduct of long-distance negotiations. This Court stated in Lil' Man that "[a] defendant 'directly solicit[ing] business in the forum state . . . will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws.' Visiting the plaintiff in the forum state . . . constitutes the solicitation of business." Id. at *4 (quoting Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986); Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1329, 1331 (9th Cir. 1984)). Here, it is undisputed that Harvie did visit Donati in California prior to the execution of the agreement for the purpose of discussing that agreement.

The Court concludes that Defendants have purposefully availed themselves of this forum and that Plaintiff's claims arise out of Defendants' forum-related activities.

### 2. Reasonableness

The Court concludes that Plaintiff has successfully satisfied the first two prongs of the Ninth Circuit's test for establishing personal jurisdiction. Thus, the burden shifts to Defendants to "'present a compelling case' that the exercise of jurisdiction would not be reasonable."

10

Schwarzenegger, 374 F.3d at 802. The Ninth Circuit has identified seven relevant factors in determining the reasonableness of asserting jurisdiction over a nonresident defendant. Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd., 828 F.2d 1439, 1442 (9th Cir. 1987). It considers:

> "(1) The extent of purposeful interjection into the forum state; (2) The burden on the defendant of defending in the forum; (3) The extent of conflict with the sovereignty of defendant's state; (4) The forum state's interest in adjudicating the dispute; (5) The most efficient judicial resolution of the controversy; (6) The importance of the forum to plaintiff's interest in convenient and effective relief; (7) The existence of an alternative forum."

Id.

The Court has already rejected Defendants' proposition that they "have not purposefully injected themselves into California." Defendants barely attempt to meet their burden of establishing the second factor, stating only that "Defendants are foreign parties who will be unreasonably burdened with litigating in a forum they could not reasonably have foreseen." ECF No. 24 at 21. This merely restates the factor without analysis. Given the Defendants' strenuous suggestion that the case be litigated in Alaska, id. at 8, where the costs of travel (and perhaps attorney time) are likely to be even higher than in Northern California, merely reciting this factor without more is insufficient. In addition, "[t]he burden of litigating in a foreign forum has become less significant as a result of advances in communication and transportation." FDIC, 828 F.2d at 1444.

Defendants do not address the third factor. With regard to the fourth factor, just as Alaska has an interest in regulating commerce within the state, California has an interest in protecting its residents in contract disputes with foreign entities. Since the parties did not include a forum selection clause or any clear indication that a particular State's law should govern the agreement, it does not seem unreasonable to retain the case here. In addition, the only United States-based party is located in California, none of the parties or witnesses are located in Alaska, and several witnesses are located in California,[6] and it seems the case is already positioned for the most

---

[6] See ECF No. 26-1, Ex. A.

11

convenient and efficient resolution in this district.

The Court concludes that Defendants have failed to meet their burden of showing that the exercise of this Court's jurisdiction is unreasonable.

### B. Venue

A civil action may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). In light of this Court's determination that personal jurisdiction exists over Defendants, it follows that venue is also proper.

### C. Transfer

Weighing the Jones factors, the Court concludes that the majority lean in Plaintiff's favor. First, while the location of the negotiations is disputed, no one alleges that they took place, or that the contract was executed, in Alaska. Second, as previously stated, the agreement does not specify which state's laws should govern. Third, California is the Plaintiff's chosen forum. As for as the fourth and fifth factors, the Court has already discussed the parties' respective contacts with California at length and found that there are sufficient contacts in this district.

Nor do the parties' contacts with Alaska weigh in favor of transfer. Defendants are physically located in Canada, Plaintiff is in California, and none of the workers reside in Alaska. ECF 26-1 ¶ 11. In fact, the only relevant residents of Alaska seem to be the cattle themselves, which does not warrant a transfer of venue. The "ease of access to sources of proof" is at best a wash, given that the evidence concerning both the parties' negotiations and Plaintiff's damages are located in California.

In sum, the Court finds that the weight of the Jones factors favors maintenance of this suit in California.

### D. Failure to State a Claim

#### 1. Declaratory Relief

"Courts may choose not to permit a claim for declaratory relief when resolution of other claims would sufficiently resolve the controversy." McVicar v. Goodman Global, Inc., 1 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014). In other words, "[w]hen the issues invoked in a request for

declaratory relief already were fully engaged by other causes of action, . . . then declaratory relief is unnecessary and superfluous" and must be dismissed. Howard v. First Horizon Home Loan Corp., 2013 WL 6174920, at *8 (N.D. Cal. Nov. 25, 2013) (internal quotations and alterations removed).

Here, Plaintiff's claim for declaratory relief is entirely duplicative of its other claims. The Court dismisses this claim.

### 2. Breach of Contract

To prevail on a breach of contract claim, a plaintiff must prove "(1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." Richman v. Hartley, 224 Cal. App. 4th 1182, 1186 (2014). Plaintiff alleges that Defendants made misrepresentations regarding various aspects of the contract, operated the cattle business in bad faith, incurred unwarranted expenses, and stole money from Plaintiff. ECF No. 16 at 4.

However, "in the absence of any allegations identifying contractual terms that were violated as well as specific conduct that violated those terms, these statements are conclusory." Guliad v. CH2M Hill, Inc., Case No. 15-cv-04824-JST, 2016 WL 926974, at *4 (N.D. Cal. March 10, 2016) (citing Holcomb v. Wells Fargo Bank, N.A., 155 Cal. App. 4th 490, 501, 66 Cal. Rptr. 3d 142, 150 (2007), as modified (Oct. 22, 2007) ("Without specifying . . . [ther] terms Holcomb claims the bank had breached, the complaint fails to adequately state a cause of action for breach of contract.")). Plaintiff fails to include any specifics at all. The Court dismisses Plaintiff's claim for breach of contract.

### 3. Fraud

To plead a cause of action for fraud, a plaintiff must allege "(1) a knowingly false representation by the defendant, (2) an intent to defraud or to induce reliance, (3) justifiable reliance, and (4) resulting damages." Croeni v. Goldstein, 21 Cal. App. 4th 754, 758 (1994). Every element must be specifically pleaded. Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991). Here, Plaintiff alleges that Defendants made misrepresentations "with the intent to induce Plaintiff to proceed with the acquisition of the cattle and all related rights," and

13

"undertook conduct in order to self-deal and steal from Plaintiff," and that Plaintiff relied on Defendants' false representations. ECF No. 16 at 5.

The Court concludes that Plaintiff has not plausibly pleaded a claim of fraud. Outside of general statements, Plaintiff does not allege particular representations that were false or any conduct that indicates knowledge or fraudulent intent. The Court dismisses Plaintiff's claim for fraud and misrepresentation.

### 4. Economic Loss Rule

In addition to Plaintiff's failure adequately to allege the elements of its fraud, both that claim and Plaintiff's negligence claim are barred by the economic loss rule.

"The economic loss rule . . . bars a party from bringing tort claims in a breach of contract action for pure economic loss 'unless [the purchaser] can demonstrate harm above and beyond a broken contractual promise.'" Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP, No. 15-CV-05789-JST, 2016 WL 1394360, at *5 (N.D. Cal. Apr. 8, 2016) (quoting Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 988 (2004) (citations omitted)). The California Supreme Court has noted that the economic loss rule is necessary to "prevent[ ] the law of contract and the law of tort from dissolving into one another." Robinson Helicopter, 34 Cal.4th at 988 (internal modification and quotations omitted). "Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." Id. (quoting Erlich v. Menezes, 21 Cal. 4th 543, 441 (1999)). "Like other species of fraud claims, . . . promissory fraud claims are subject to the economic loss rule. UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc., 117 F. Supp. 3d 1092, 1104 (C.D. Cal. 2015) (citations omitted).

Plaintiff has not identified any allegedly tortious conduct outside of the Defendants' breach of the parties' contract. Indeed, although Plaintiff uses the phrase "not based on any contract," its negligence allegations make clear that all of the challenged conduct occurred within the performance of the contract. E.g., FAC ¶¶ 25-26 ("In agreeing to operate the Cattle Business for Plaintiff not based on any contract, Defendants owed Plaintiff a duty of care regarding the manner in which the business was operated. Defendants breached this obligation and have acted negligently in improperly incurring expenses and self-dealing, thereby causing damages[.]").

14

Plaintiff's fraud and negligence claims are barred by the economic loss rule.[7]

### 5. Unjust Enrichment

In California, "[t]here is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." Myers–Armstrong v. Actavis Totowa, LLC, 382 Fed.Appx. 545, 548 (9th Cir.2010) (unpublished) (citing McKell v. Washington Mut., Inc., 142 Cal.App.4th 1457, 1489, 49 Cal.Rptr.3d 227, 254 (2006). See also Hill v. Roll Intl. Corp, 195 Cal.App. 4th 1295, 1307, 128 Cal.Rptr.3d 109 (2011) ("Unjust enrichment is not a cause of action, just a restitution claim."). Since Plaintiff has not adequately alleged any claim for a constructive trust or quasi-contract, Plaintiff's unjust enrichment claim is dismissed without prejudice.

### 6. Indemnity

In its indemnity claim, Plaintiff invokes the indemnity provision in the parties' agreement, which provides:

> Harvie shall defend, indemnify, and hold harmless the Purchaser, its officers, directors, stock holders, agents, servants, employees, and, their respective heirs, personal and legal representatives, guardians, successors and assigns, from and against any and ail claims, threats, liabilities, taxes, interest, fines, penalties, suits, actions, proceedings, demands, damages, losses, costs and expenses, including reasonable attorneys fees and expert fees, and court coats of every kind or nature (collectively "adverse consequences") arising out of; resulting from, or in connection with any material misrepresentation or breach by Harvie of any representation or warranty contained in this agreement or any formal purchase and sale agreement.

The transparent purpose of this paragraph is to require Harvie to defend, indemnify, and hold harmless the Plaintiff from claims *against the Plaintiff* by third parties, not to provide an independent basis for the Plaintiff to sue Defendants. Any interpretation to the contrary would be implausible.

The Court dismisses Plaintiff's claim for indemnity.

### 7. An Accounting

Plaintiff asserts in opposition to the motion to dismiss that "all necessary allegations

---

[7] Although Defendants challenge Plaintiff's negligence claim as barred by the economic loss rule, they do not contend that the claim is inadequately pled.

15

supporting a cause of action for accounting have been pled." ECF 26 at 26. "A complaint sufficiently states a claim for an accounting, therefore, by alleging that (1) a fiduciary relationship, (2) losses in an amount that cannot be ascertained, and (3) misconduct. Kritzer v. Lancaster, 96 Cal.App.2d 1, 6-7 (Cal. 1950). The complaint does not allege a fiduciary relationship. Plaintiff also does not explain, either in its complaint or in its opposition, why its losses cannot be ascertained through the normal process of civil discovery and without an accounting.

The Court dismisses Plaintiff's claim for accounting.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss for lack of jurisdiction or improper venue and their motion to transfer the case to the District of Alaska. The Court grants Defendants' motion to dismiss for failure to state a claim as to each of Plaintiffs' causes of action, with leave to amend. An amended complaint must be filed by November 17, 2017.

**IT IS SO ORDERED.**

Dated: October 24, 2017

_____
JON S. TIGAR
United States District Judge