William C. Reeves - 183878
MORALES FIERRO & REEVES
2300 Contra Costa Blvd., Suite 310
Pleasant Hill, CA 94523
Telephone: 925/288-1776
Facsimile: 925/288-1856
Email: wreeves@mfrlegal.com

Charles E. Merrill - 87861
MERRILL, NOMURA & MOLINEUX LLP
65 Oak Court
Danville, CA 94526
Telephone: 925/833-1000
Facsimile: 925/833-1001
Email: cmerrill@merrillnomura.com

Attorneys for Plaintiff
Sustainable Ranching Partners, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSTAINABLE RANCHING PARTNERS, INC., | Case No.: 17-cv-02323-JST |
| Plaintiff, | |
| vs. | |
| BERING PACIFIC RANCHES LTD., et al., | |
| Defendants. | |

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DKT NO. 38]

DATE: February 22, 2018
TIME: 2:00 p.m.
DEPT: Courtroom 9

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Introduction | | 1 |
| Background Facts | | 3 |
| Discussion | | 5 |
| A. | The SAC Seeks Damages Based On Two Core Claims, Each Of Which Are Supported By Adequate Factual Allegations. | 6 |
| B. | The Economic Loss Rule Does Not Bar The Claims Against Harvie. | 8 |
| C. | The Breach Of Fiduciary Duty Cause Of Action Is Properly Pled. | 10 |
| D. | The Declaratory Relief Cause Of Action Is Appropriate. | 11 |
| E. | The Constructive Trust Cause Of Action Is Properly Pled. | 12 |
| F. | Leave To Amend Is Requested. | 13 |
| Conclusion | | 14 |

# TABLE OF AUTHORITIES

Page

I. Supreme Court Decisions

Ashcroft v. Iqbal 5
(2009) 556 U.S. 662

Bell Atl. Corp. v. Twombly 5
(2007) 550 U.S. 544

II. Circuit Decisions

Ackerman v. Northwester Mut. Life Ins. Co. 13
(7th Cir. 1999) 172 F.3d 467

Barker v. Riverside County Office of Ed. 2, 7
(9th Cir. 2008) 584 F.3d 821

British Airways Bd. V. Boeing Co. 7
(9th Cir. 1978)

Corrie v. Caterpillar, Inc. 5, 11
(9th Cir. 2007) 503 F.3d 974

PAE Government Services, Inc. v. MPRI, Inc. 6, 7, 12
(9th Cir. 2007) 514 F.3d 856

Semegen v. Weidner 13
(9th Cir. 1985) 780 F.2d 727

Sonoma County Ass'n of Retired Employees v. Sonoma County 2, 13
(9th Cir. 2013) 708 F.3d 1109

Sprewell v. Golden State Warriors 6, 11
(9th Cir. 2001) 266 F.3d 979

Starr v. Baca 2, 7
(9th Cir. 2011) 652 F.3d 1202

Strom v. United States 2
(9th Cir. 2011) 641 F.3d 1051

III. Federal District Court Decisions

Dullas v. Springleaf Financial Services, Inc. 6, 7
(C.D. Cal. 2014) WL 12607698

Global Acquisitions Network v. Bank of America 11
(C.D. Cal. 2013) WL 604159

Rich Products Corp. v. Kemutec, Inc. 9
(E.D. Wis. 1999) 66 F.Supp.2d 937

Vega v. JPMorgan Chase Bank, N.A. .................................................................... 5
(E.D. Cal. 2009) 654 F.Supp.2d 1104

IV.     Cal. State Court Decisions

California Pines Property Owners Assn v. Pedotti .............................................. 11
(2012) 206 Cal.App.4th 384

Campbell v. Birch .................................................................................................... 9
(1942) 19 Cal.2d 778

Chodos v. Borman .................................................................................................. 13
(2014) 227 Cal.App.4th 76

City of Hope Nat. Medical Center v. Genentech, Inc. ........................................ 10
(2008) 43 Cal.App.4th 25

Foley v. Interactive Data Corp. ........................................................................ 9, 10
(1988) 47 Cal.3d 654

Freeman & Mills, Inc. v. Belcher Oil Co. ............................................................ 10
(1995) 11 Cal.4th 85

Gilman v. Dalby ..................................................................................................... 10
(2009) 176 Cal.App.4th 606

Hunter v. Up-Right, Inc. .......................................................................................... 9
(1993) 6 Cal.App.4th 1174

Jimenez v. Superior Court ....................................................................................... 9
(2002) 29 Cal.4th 473

Lazar v. Superior Court ........................................................................................... 9
(1996) 12 Cal.4th 631

North American Chemical Co. v. Superior Court ............................................... 10
(1997) 59 Cal.App.4th 764

Optional Capital, Inc. v. Das Corporation .......................................................... 12
(2014) 222 Cal.App.4th 1388

Pat Rose Associates v. Coombe ............................................................................. 10
(1990) 225 Cal.App.3d 9

Robinson Helicopter Co., Inc. v. Dana Corp. ........................................................ 8
(2004) 34 Cal.4th 979

Tavaglione v. Billings ............................................................................................. 10
(1993) 4 Cal.4th 1150

Wolf v. Superior Court .......................................................................................... 10
(2003) 107 Cal.App.4th 25

///

1    V. <u>Out of State Decisions</u>

<u>Neibarger v. Universal Cooperatives, Inc.</u>     9
(1992) 439 Mich. 512

<u>Redarowicz v. Ohlendorf</u>     9
(1982) 92 Ill.2d 171

VI.    <u>Authorities and Statutes</u>

Federal Rules of Civil Procedure Rule 15(a)(2)     2, 13

Witkin, Summary of Cal. Law (9th ed. 1988), Torts, § 726     9

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff Sustainable Ranching Partners, Inc. opposes the Motion to Dismiss [Dkt. No. 38] filed by Defendants Bering Pacific Ranches Ltd. ("BPR") and Patrick Harvie ("Harvie") as follows:

## Introduction

This matter is a dispute centered around Plaintiff's efforts to purchase Alaskan cattle to be butchered, marketed and sold in California. In connection with extensive briefing as to a prior Motion to Dismiss, this Court previously held both that it had personal jurisdiction over this dispute and that the Northern District was an appropriate venue. Dkt. No. 33. In Defendants' recently-filed Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"), Defendants baldly argue that notwithstanding this Court's jurisdiction over this dispute, no cognizable legal claims exist arising from this dispute such that this case should be dismissed in its entirety.[1]

The SAC asserts causes of action/legal theories of recovery based on the following two (2) core claims:

- Plaintiff sustained damages as a result of being misled into entering an agreement with BPR by Harvie's material misrepresentations as to the size of the herd, the value of the herd, the viability of the existing improvements needed to ship the cattle to California, the availability of a local workforce to perform all necessary work and the period of time each year that the shipping of cattle was feasible. SAC, ¶¶ 9a-9g.

- Plaintiff sustained damages resulting from the conduct of Harvie who, after agreeing to manage operations for a fee, deliberately mismanage the business by, inter alia, incurring needless and unnecessary expenses, self dealing and deliberately not taking the necessary steps to maximize the slaughter of cattle with the intent of injuring Plaintiff. SAC ¶ 13.[2]

---

[1] In their Motion, Defendants half-heartedly contend that no jurisdiction lies for this dispute without offering any new facts or law while ignoring completely the proper procedure for requesting reconsideration. See Dkt. No. 38, 18:20-27. As the issue of both jurisdiction and venue has been extensively briefed by the parties and addressed by this Court in a sixteen (16) page Order, the omission of any new facts or law bars Defendants' efforts. To the extent this Court believes otherwise, Plaintiff incorporates herein all prior arguments previously made and respectfully submits that no rational basis exists for a new or different ruling on this issue.

[2] The SAC also includes a Declaratory Relief cause of action seeking declarations from this Court regarding the terms of the agreement between Plaintiff and BPR since core terms of the agreement that served as the basis for Plaintiff's previously pled breach of contract cause of action (i.e., number of cattle, value of the herd, viability of the infrastructure, local workforce and harvest season) are disputed. Given this dispute, Plaintiff has omitted a breach of contract cause of action in the SAC and instead seeks a declaration of the parties' respective rights and obligations, including a declaration regarding whether performance is even required since the contract only contemplates payment on a per sale basis with no corresponding obligation that Plaintiff incur the time and expense to harvest the meat for sale.

---

Based on these claims, Plaintiff has pled causes of action for fraud, negligent misrepresentation, breach of fiduciary duty, negligence and constructive trust.

In responding to these claims, Defendants repeatedly state that the claims are "implausible," "unreasonable" and "precluded by judicial estoppel." In so doing, Defendants ignore that a pre-Answer motion is intended to test the legal sufficiency of the claims, and not whether the claims are meritorious. See <u>Strom v. United States</u>, 641 F.3d 1051 (9th Cir. 2011). Under this standard, the Complaint is construed in the light most favorable to the Plaintiff win which all alleged facts are presumed to be true. <u>Starr v. Baca</u>, 652 F.3d 1202 (9th Cir. 2011); <u>Barker v. Riverside County Office of Ed.</u>, 584 F.3d 821 (9th Cir. 2008).

Based on this standard, Defendants' motion is procedurally improper as it is a de-facto motion for summary judgment, albeit without any supporting evidence. Defendants' repeated attack of the claims as "implausible" consistently ignores that all alleged facts are presumed true and that plausibility only bears on legal conclusions, not alleged facts. Advocacy aside, in light of this standard, Defendants' repeated attack on the merits of the Plaintiff's claims in light of the alleged facts is procedurally improper and substantively unavailing.[3]

To the extent that this Court views Defendants' motion as bearing merit, leave to amend is requested in accordance with the Federal policy that strongly favors affording leave absent bad faith or a dilatory motive. FRCP 15(a)(2); <u>Sonoma County Ass'n of Retired Employees v. Sonoma County</u>, 708 F.3d 1109, 1117 (9th Cir. 2013). In this case, Plaintiff's claims, at their core, are that it was both misled by Harvie by entering into a contract that it would not have not otherwise done and that it was damaged by the stealing of money and deliberate sabotage of the cattle operations. Respectfully, assuming in the light most favorable to Plaintiff that facts it alleged are true, cognizable legal theories necessarily exist. If merit exists to Defendants' motion, therefore, leave of Court to fil an amended pleading is warranted.

---

[3] Defendants' efforts are largely based on the First Amended Complaint ("FAC") previously filed and a Declaration of Chris Donati (principal of Plaintiff)filed in connection with a prior Motion to Dismiss. Dkt Nos. 16, 26-1. To the extent this Court believes the FAC and/or Declaration bear on the "plausibility" of the SAC, Plaintiff requests an opportunity to file an additional Declaration confirming under penalty of perjury that all factual allegations made in the SAC are supported.

Accordingly, for the reasons set forth herein, it is respectfully submitted that Defendants' motion be denied.

## Background Facts

Per this Court's prior Order:

> In or around 2015, Defendants contacted Donati through an intermediary residing in California. ECF No. 16 at 2. During 2015 and 2016, Donati and Defendants engaged in "extensive conversations and discussions regarding the Cattle Rights ... over the phone and via mail." Id. During this time, Harvie visited California, met with Donati, and stayed in Napa "for approximately one week ... in part [to] market and sell the Cattle Business." Id. Throughout the negotiations, Defendants "made affirmative assertions regarding the Cattle Rights, including, but not limited to, the size of the herd, the makeup of the herd, the operations of the on-site facilities and functionality thereof, the oversight and management of the Cattle Business by Harvie, and the ability to butcher, transport, treat, harvest and distribute the cattle." Id. Plaintiff relied on these representations and entered into a written agreement between the parties. Id. The written agreement also fully incorporated a Letter of Intent ("LOI"), dated August 2, 2016. Id.; Ex. A. "Plaintiff agreed to acquire the cattle via a stock sale" and to pay Defendants "to operate the Cattle Business and pay expenses needed to do so." ECF No. 16 at 2.
>
> Following execution of the agreement, "Defendants breached the Agreement and corresponding fiduciary duty" owed to Plaintiff by "misrepresenting the number of cattle, the scope and extent of the infrastructure needed to operate the Cattle Business, the ability to transport the cattle, the functionality of improvements and equipment and the ability to have employees and independent contractors to understand the necessary functions to maintain and develop the cattle operation." Id. at 3. Plaintiff alleges it suffered damages "in excess of $1,800,000" and "is continuing to incur expenses in an effort to mitigate its damages associated with the falsity of the Representations."
>
> Plaintiff asserts seven causes of action: (1) declaratory relief; (2) breach of contract; (3) negligence; (4) fraud; (5) unjust enrichment; (6) indemnity; and (7) an accounting against Defendant Harvie.

ECF 33, 2:12-3:9.

This Court held that all of these causes of action failed to state a cognizable claim for relief. ECF 33, 12:24-15:7. In so doing, leave to amend was afforded. ECF 33, 16:9-13.

In the SAC, Plaintiff's factual allegations are largely identical (albeit with more specificity to address one of the concerns previously raised)::

> 8. Between 2015 and 2016 and based on these targeted efforts to

California, Harvie and Donati had extensive conversations and discussions regarding the Cattle Rights. These discussions, which occurred over the phone and via mail, largely occurred in California in Napa, and included a personal visit by Harvie to California during which Harvie met with Donati in Napa and stayed in Napa for approximately one week to, in part, market and sell the Cattle Business.

9. In connection with discussions that occurred, inter alia, in August 2016 during Harvie's visit to California, Harvie made the following affirmative representations regarding the Cattle Business:

a. The size of the herd totaled 9,263 head;

b. The herd had a net value of $7,473,335;

c. The capital improvements needed to maintain and butcher the cattle were functional and operational without the need for any repairs or remediation;

d. The capital improvements were adequate to slaughter between 50 and 60 head a day;

e. A workforce was readily available to perform all tasks needed to operate and run the Cattle Business;

f. The Cattle Business could readily operate without interruption through the Winter and into December and January each year.

g. For the Fall and Winter of 2016 (September - November), no less than 1,382 head would be slaughtered and available to be shipped to California.

10. These representations were and are false . . .

. . .

11. Separate and apart from these representations, and as an inducement in connection with negotiations, Harvie offered to operate and run the Cattle Business for Plaintiff for the Fall and Winter of 2016 (September - December). In so doing, and in consideration for payments exceeding $50,000, Harvie undertook a fiduciary responsibility to Plaintiff to operate the Cattle Business on its behalf using best efforts.

12. Based in and in reliance on the validity of the representations and Harvie's offer to operate the Cattle Business on Plaintiff's behalf, Plaintiff entered into a written agreement in November 2016 which incorporates fully the "Letter of Intent" dated August 2, 2016 ("Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A

13. Subsequent to entering into Exhibit A, Plaintiff learned that Harvie's affirmative representations were false. Meanwhile, Harvie proceeded to mismanage the Cattle Business by, inter alia,

prematurely directing workers to cease all activities and not work, incurring needless and unnecessary expenses in connection with a helicopter and boat operated and run by himself and/or family members that were exorbitant and/or unnecessary that Plaintiff was required to pay and deliberately not undertaking the necessary steps to slaughter at least a minimum number of cattle needed to make the Cattle Business profitable.

ECF 35, 2:13-4:9.

Based upon these allegations, and in light the rulings this court previously made, Plaintiff has asserted causes of action against Harvie (not BPR) for:

- Negligent Misrepresentation
- Fraud (in the inducement)
- Breach of Fiduciary Duty
- Negligence.

The SAC includes two additional causes of action as against both Harvie and BPR- declaratory relief and constructive trust. As to the declaratory relief cause of action, Plaintiff seeks declarations regarding the terms of the agreement between Plaintiff and BPR, and whether the agreement obligates Plaintiff to actually market and sell cattle (since payment is only tied to sales). Meanwhile, the constructive trust claim is based on the request for an accounting in order to understand how Plaintiff's money was spent by Harvie and used by BPR

## Discussion

The rules governing a motion to dismiss are well known to this Court and will not be exhaustively addressed herein. A motion to dismiss challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). Allegations of fact in the complaint, therefore, must be taken as true and construed in the light most favorable to the non-moving party.

Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).[4]

It is well established that a complaint may include inconsistent legal theories, even if the alternatives are mutually exclusive. PAE Government Services, Inc. v. MPRI, Inc., 514 F.3d 856 (9th Cir. 2007). A party, therefore, may plead alternative theories of liability, even if those theories are inconsistent. Dullas v. Springleaf Financial Services, Inc., 2014 WL 12607698 (C.D. Cal. 2014).

A. The SAC Seeks Damages Based On Two Core Claims, Each Of Which Are Supported By Adequate Factual Allegations.

In the SAC, Plaintiff asserts legal theories supporting the entitlement to monetary damages based on the following two (2) core claims:

- Plaintiff was misled by Harvie's misrepresentations that caused Plaintiff to enter into a contract with Harvie ("Misrepresentation Claim")
- Harvie deliberately mismanaged and stole from Plaintiff in connection with Harvie's management of the cattle operations for a fee ("Mismanagement Claim")

Facts pled in the SAC in support of the Misrepresentation Claim include the following false representations made by Harvie that Plaintiff relied upon:

Fact 1: The size of the herd totaled 9,263 head;

Fact 2: The herd had a net value of $7,473,335;

Fact 3: The capital improvements needed to maintain and butcher the cattle were functional and operational without the need for any repairs or remediation;

Fact 4: The capital improvements were adequate to slaughter between 50 and 60 head a day;

Fact 5: A workforce was readily available to perform all tasks needed to operate and run the Cattle Business;

Fact 6: The Cattle Business could readily operate without interruption through the Winter and into December and January each year.

---

[4] Given this standard, Plaintiff is not offering an updated Declaration of Chris Donati to either confirm the accuracy of the factual allegations pled in the SAC or rebut the self-serving inferences Defendants draw from his prior declaration. If deemed relevant by this Court, Plaintiff will readily secure a declaration confirming that all factual allegations made in the SAC are true and correct based on personal knowledge and under penalty of perjury.

Fact 7: For the Fall and Winter of 2016 (September - November), no less than 1,382 head would be slaughtered and available to be shipped to California.

SAC, ¶¶ 9-10.

In responding to Facts 1-7, Defendants effectively request that this Court ignore them altogether as, per Defendants, they are contrary to prior allegations made in the FAC and/or somehow contradicted by C. Donati's prior declaration and/or generally impluasible based on the circumstances surrounding the deal. Each of these arguments fail.

As a starting point, Defendants disregard the fact that Complaints are construed in the light most favorable to the Plaintiff in which all alleged facts are presumed to be true. Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011); Barker v. Riverside County Office of Ed., 584 F.3d 821 (9th Cir. 2008). Any request that this Court ignore facts, therefore, is contrary to the rules governing a motion to dismiss.

Second, Defendants fail to take into consideration that a Plaintiff may plead inconsistent legal theories, even if the alternatives are mutually exclusive. PAE Government Services, Inc. v. MPRI, Inc., 514 F.3d 856 (9th Cir. 2007); Dullas v. Springleaf Financial Services, Inc., 2014 WL 12607698 (C.D. Cal. 2014). Inconsistencies, therefore, are of no legal import in connection with a motion to dismiss.

Third, Facts 1-7 quoted above are consistent with the FAC as well as the declaration of Chris Donati with the only difference being additional specificity regarding each of these allegations (the specificity being added to address a concern previously made by this Court). Compare FAC ¶ 9 with SAC ¶ 9 with Dkt. No. 26-1, ¶ 6. Given this, setting aside the fact that inconsistent allegations are acceptable, the allegations made in this case are consistent.

Fourth, the circumstances regarding the deal, from Defendants' perspective, are not before this Court. Arguments by counsel are no substitute for evidence. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir.1978). Recognizing that evidence is only relevant to a motion for summary judgment and not a motion to dismiss, the views and musings of counsel as to the believability of Facts 1-7 are irrelevant.

The SAC, therefore, includes adequate facts to support the Misrepresentation Claim.

As for the the Mismanagement Claim, the SAC includes allegations that Harvie, acting as the agent for Plaintiff, intentionally and deliberately mismanaged the Cattle Business by, inter alia, prematurely directing workers to cease all activities and not work, incurring needless and unnecessary expenses in connection with a helicopter and boat operated and run by himself and/or family members that were exorbitant and/or unnecessary that Plaintiff was required to pay and deliberately not undertaking the necessary steps to slaughter at least a minimum number of cattle needed to make the Cattle Business profitable. SAC, ¶ 13.

Respectfully, these factual allegations adequately support the Mismanagement Claim at this stage of the proceeding. To the extent that this Court concludes otherwise, leave to amend is requested.

B.     <u>The Economic Loss Rule Does Not Bar The Claims Against Harvie.</u>

As noted above, the SAC includes the following two claims

- Plaintiff was misled by Harvie's misrepresentations that caused Plaintiff to enter into a contract with Harvie ("Misrepresentation Claim")
- Harvie deliberately mismanaged and stole from Plaintiff in connection with Harvie's management of the cattle operations for a fee ("Mismanagement Claim")

In connection with the Misrepresentation Claim, Plaintiff alleges it was misled into entering into a contract with BPR. Meanwhile, in connection with the Mismanagement Claim, Plaintiff alleges that it was defrauded by Harvie in his handling of the cattle operations for a fee. Based on these factual allegations, causes of action for fraud (in the inducement), negligent misrepresentation and negligence have been alleged as against Harvie - not BPR.[5]

Defendants' argument that these claims are barred by the economic loss rule is misplaced. Per the California Supreme Court in <u>Robinson Helicopter Co., Inc. v. Dana Corp</u>. 34 Cal.4th 979 (Cal. 2004):

> Economic loss consists of " ' " 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other

---

[5] A separate cause of action for breach of fiduciary duty has been alleged against Harvie as well. As this cause of action lies in contract and not tort, it is not impacted by the economic loss rule.

8
OPPOSITION      Case No.: 17-cv-02323-JST

> property....' " ' [Citation.]" (Jimenez v. Superior Court (2002) 29 Cal.4th 473, 482, 127 Cal.Rptr.2d 614, 58 P.3d 450.) Simply stated, the economic loss rule provides: " ' "[W]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." ' This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." (Neibarger v. Universal Cooperatives, Inc. (1992) 439 Mich. 512, 486 N.W.2d 612, 615, fns. omitted.) The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise. **273 (Redarowicz v. Ohlendorf (1982) 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324, 327.) Quite simply, the economic loss rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." (Rich Products Corp. v. Kemutec, Inc. (E.D.Wis.1999) 66 F.Supp.2d 937, 969.)

Id. at 989-990.

While the economic loss rule bars a tort action in the absence of personal injury or physical damage to other property, it does not apply to claims for fraud in the inducement, a fact noted by the California Supreme Court in <u>Lazar v. Superior Court</u>, 12 Cal.4th 631 (Cal. 1996):

> Contrary to defendant's arguments, fraudulent inducement of contract—as the very phrase suggests—is not a context where the "traditional separation of tort and contract law" (Foley, supra, 47 Cal.3d at p. 693, 254 Cal.Rptr. 211, 765 P.2d 373; Hunter, supra, 6 Cal.4th at p. 1181, 26 Cal.Rptr.2d 8, 864 P.2d 88) obtains. To the contrary, this area of the law traditionally has involved both contract and tort principles and procedures. For example, it has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud. (Campbell v. Birch (1942) 19 Cal.2d 778, 791, 122 P.2d 902; see generally 5 Witkin, Summary of Cal.Law, supra, Torts, § 726, pp. 825–826.)
>
> Defendant opines that barring claims for fraudulent inducement of employment contract, in light of "existing protections against improper terminations" (see Hunter, supra, 6 Cal.4th at p. 1182, 26 Cal.Rptr.2d 8, 864 P.2d 88, citing Foley, supra, 47 Cal.3d at pp. 692–693, 254 Cal.Rptr. 211, 765 P.2d 373), would leave employees well protected. But the resolution proposed here involves affirming, not inventing, the cause of *646 action for promissory fraud. Thus the "existing protections" we invoked in Hunter necessarily included the availability of promissory fraud actions like this one.
> 1213 More fundamentally, it is a truism that contract remedies alone do not address the full range of policy objectives underlying the action for fraudulent inducement of contract. In pursuing a valid fraud

9

> action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future. (Cf. Foley, supra, 47 Cal.3d at p. 683, 254 Cal.Rptr. 211, 765 P.2d 373 [recognizing tort law is designed to vindicate social policy].) Because of the extra measure of blameworthiness inhering in fraud, and because in fraud cases we are not concerned about the need for "predictability about the cost of contractual relationships" (ibid.) fraud plaintiffs may recover "out-of-pocket" damages in addition to benefit-of-the-bargain damages. (Tavaglione v. Billings, supra, 4 Cal.4th at p. 1159, 17 Cal.Rptr.2d 608, 847 P.2d 574, citing with approval Pat Rose Associates v. Coombe (1990) 225 Cal.App.3d 9, 20, 275 Cal.Rptr. 1; see also Freeman & Mills, Inc. v. Belcher Oil Co. (1995) 11 Cal.4th 85, 97, 44 Cal.Rptr.2d 420, 900 P.2d 669 [discussing "[t]he distinction between tort and contract actions, and their purposefully different measure of damages"].)

Id. at 645-646.

In this case, the Misrepresentation Claim is based entirely on fraud in the inducement. Per Robinson Helicopter and Lazar, the cause of action is legally proper.

As to the Mismanagement Claim, the economic loss rule the rule does not encompass claims relating to defective services. North American Chemical Co. v. Superior Court, 59 Cal.App.4th 764, 777–779 (Cal. 1997). Given this, the negligence claim asserted against Harvie as to his mismanagement of the cattle operations is legally valid.

C.  The Breach Of Fiduciary Duty Cause of Action Is Properly Pled.

A fiduciary relationship exists between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. Gilman v. Dalby, 176 Cal.App.4th 606, 613 (Cal. 2009). Inherent in these relationships is the duty of undivided loyalty the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more stringent than those required of ordinary contractors. Wolf v. Superior Court, 107 Cal.App.4th 25, 30 (Cal. 2003).

One who knowingly undertake to act on behalf and for the benefit of another owes a fiduciary duty to the principal on behalf the work was performed. City of Hope Nat. Medical Center v. Genentech, Inc., 43 Cal.4th 375, 386 (Cal. 2008). Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal. Wolf v. Superior Court, 106 Cal.App. 4th 25, 30 (Cal. 2003).

Per the SAC, Harvie, given his expertise and experience, agreed to operate the cattle business for the benefit of Plaintiff. SAC ¶ 11. In so doing, Plaintiff alleges that Harvie's conduct as Plaintiff's agent included an agreement that Harvie would owe Plaintiff a fiduciary duty. Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). Allegations of fact in the complaint, therefore, must be taken as true and construed in the light most favorable to the non-moving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Defendants' focus on the "best efforts" verbiage ignores the broader allegations made. Harvie agreed to manage the cattle operations on behalf of Plaintiff, and therefore as its agent. In so doing, Plaintiff expressly relied on Harvie's acumen, experience and training to manage the operations.

Per the SAC, Harvie proceeded to intentionally mismanage the operations by, inter alia, incurring needless and unnecessary expenses, self dealing and deliberately not taking the necessary steps to maximize the slaughter of cattle with the intent of injuring Plaintiff. SAC ¶ 13. Based on this conduct, Plaintiff respectfully submits that Harvie breached the fiduciary duty owed.

Defendants' reliance on Global Acquisitions Network v. Bank of America, 2013 WL 604159 (C.D. Cal. 2013) is misplaced as Global Acquisitions involved claims against a lender, not an agent operating a business venture. The same holds true for California Pines Property Owners Assn. v. Pedotti, 206 Cal.App.4th 384 (Cal. 2012) as the case involves a dispute between adjoining landowners, not an agent operating a business for the sole benefit of the Plaintiff.

Based on these considerations, it is respectfully submitted that the breach of fiduciary cause of action survives legal challenge. If this Court believes otherwise, leave to amend is requested.

D. <u>The Declaratory Relief Cause Of Action Is Appropriate.</u>

This Court previously ruled that Declaratory Relief is subject to the Court's discretion when other claims would sufficiently resolve the controversy. Dkt. No. 33, 12:24-23.6. In dismissing this cause of action in the FAC, this Court concluded that the relief is duplicative of the other claims. By virtue of changes in the SAC, it is respectfully submitted that the relief requested is no longer

11
OPPOSITION                                                                                              Case No.: 17-cv-02323-JST

duplicative.

As a threshold issue, the claims asserted in the SAC are largely directed to Harvie while the declaratory relief cause of action is directed to both Harvie and BPR. As it pertains to BPR, therefore, no duplication exists as the causes of action for fraud, negligent misrepresentation, breach of fiduciary duty and negligence are directed to Harvie only.[6]

Second, the declaratory relief cause of action seeks to confirm the parties rights and obligations under an agreement that is (per Plaintiff) a product of fraud and separately fails to include core terms. As to this latter point, the absence of core claims is a product of prior pleading in which Defendants' attacked a breach of contract cause of action as improperly including terms not included in the agreement. As these terms are legally significant, Defendants' contention that they are not incorporated in the contract directly led to the change in pleading style, which is permissible. See PAE Government Services, Inc. v. MPRI, Inc., 514 F.3d 856 (9th Cir. 2007); holding that a Plaintiff is permitted to plead inconsistent theories.

The fact that the contract only requires payment on a per sale basis highlights this issue. Given that Plaintiff seeks damages based on being misled, it is evaluating whether to accept any further shipments of cattle to California. If it elects not to, then no sales will occur such that no sums will be owing. In connection with the Declaratory Relief claim, Plaintiff seeks confirmation as to this and other points.

E.    The Constructive Trust Cause Of Action Is Properly Pled.

In order to create a constructive trust, three conditions must be satisfied:

- •    The existence of a res (property or some interest in the property);
- •    The plaintiff's right to that res; and
- •    The defendant's acquisition of the res by some wrongful act.

Optional Capital, Inc. v. Das Corporation, 222 Cal.App.4th 1388 (Cal. 2014).

In this case, each condition has been met.

---

[6] As it pertains to the purchase agreement (as opposed to the management agreement), Harvie ostensibly wears two hats - a principal of BPR and a shareholder of it. The claims for fraud and negligent misrepresentation are directed against Harvie in his capacity as a shareholder and beneficiary of the purchase. The claims for Declaratory Relief, largely directed to BPR, include Harvie as a principal, and is therefore different.

First, BPR is the owner of real property improvements in Alaska.

Second, Plaintiff has incurred substantial sums used to improve and better BPR's real property.

Third, as alleged in the SAC, Plaintiff alleges that it was fraudulently induced by Harvie into making these payments, and would not have done so but for Harvie's misrepresentations.

The gravamen of this cause of action is that to the extent no enforceable contract exists by which Plaintiff acquired BPR, then the latter was unjustly enriched. Per this Court's prior order, unjust enrichment is only a remedy that can be supported by the imposition of, inter alia, a constructive trust. Dkt. No. 33, 15:2-10.[7]

Defendant's attack this legal theory on the basis that it is a remedy, and not a cause of action. This distinction, however, appears to be form over substance as a constructive trust may arise in any circumstance where there has been a wrongful acquisition or detention of property to which another is entitled. See Cal. Code of Civil Procedure § 2224.

If this Court believes an issue exists, Plaintiff requests leave of Court to plead a cause of action pursuant to Section 2224 and include "constructive trust" in the prayer.. Alternatively, leave of Court is requested to either expand the Declaratory Relief cause of action to encompass these claims or separately plead a cause of action for quantum meriut for the benefit BPR realized if no enforceable agreement exists. Chodos v. Borman, 227 Cal.App.4th 76 (Cal 2014).

F.   Leave To Amend Is Requested.

To the extent that this Court views Defendants' motion as bearing merit, leave to amend is requested in accordance with the Federal policy that strongly favors affording leave absent bad faith or a dilatory motive. FRCP 15(a)(2); Sonoma County Ass'n of Retired Employees v. Sonoma County, 708 F.3d 1109, 1117 (9th Cir. 2013). In this case, Plaintiff's claims, at their core, are that it was both misled by Harvie by entering into a contract that it would not have not otherwise done and that it was damaged by the stealing of money and deliberate sabotage of the cattle operations.

---

[7] As noted in Plaintiff's prior Opposition, certain courts have held that unjust enrichment is a stand alone cause of action. Ackerman v. Northwestern Mut. Life Ins. Co., 172 F/3d 467, 469 (7th Cir. 1999); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

Respectfully, assuming in the light most favorable to Plaintiff that facts it alleged are true, cognizable legal theories necessarily exist. If merit exists to Defendants' motion, therefore, leave of Court is warranted.

## Conclusion

For the reasons set forth herein, it is respectfully submitted that Defendants' Motion To Dismiss is properly denied.

Dated: January 16, 2018

MORALES FIERRO & REEVES

By: /s/ William C. Reeves
William C. Reeves
Attorneys for Plaintiff