TROUTMAN SANDERS LLP
Dean A. Morehous, Bar No. 111841
dean.morehous@troutmansanders.com
Craig C. Crockett, Bar No. 265161
craig.crockett@troutmansanders.com
Ryan A. Lewis, Bar No. 307253
ryan.lewis@troutmansanders.com
580 California Street, Suite 1100
San Francisco, CA  94104
Telephone:    415.477.5700
Facsimile:     415.477.5710

Attorneys for Defendants
BERING PACIFIC RANCHES LIMITED and
PATRICK HARVIE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SUSTAINABLE RANCHING PARTNERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BERING PACIFIC RANCHES LIMITED and PATRICK HARVIE, <br><br> Defendants. | Case No. 17-cv-02323-JST <br><br> **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Date:   February 22, 2018 <br> Time:  2:00 p.m. <br> Place:  Courtroom 9, 19th Floor <br> Judge: Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................1

II.   ARGUMENT .......................................................................................................................1

      A.   The Motion Properly Challenges the Plausibility of the Alleged Claims ...............1

            1.   The Tort Claims Alleged in the SAC should Again be Dismissed ............5

                  a.   The Economic Loss Rule Continues to Bar the Tort Claims .........6

                  b.   The SAC Makes No Plausible Allegation of Reliance ..................8

            2.   The Fiduciary Duty and Constructive Trust Claims both Fail .................10

      B.   The Declaratory Relief Claim should be Dismissed ............................................12

            1.   The Declaratory Relief Claim Duplicates the Fraud Claims and is Implausible ........................................................................................12

            2.   Judicial Estoppel Bars the Declaratory Relief Claim ...............................13

      C.   The SAC should be Dismissed Without Leave to Amend ...................................14

III.   CONCLUSION ..................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Airs Aromatis, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*,
    744 F.3d 595 (9th Cir. 2014) ................................................................................................ 13

*Aragon-Haas v. Family Sec. Ins. Servs., Inc.*,
    231 Cal.App.3d 232 (1991) ................................................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ *passim*

*Balistreri v. Pacifica Police Dep't.*,
    901 F.2d 696 (9th Cir. 1990) ................................................................................................... 1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 2, 3, 4, 8

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) .................................................................................................. 4

*Cal. Pines Prop. Owner Assoc. v. Pedotti*,
    206 Cal.App.4th 384 (2012) ................................................................................................... 10

*Cline v. Industrial Maintenance Eng'g & Contr. Co.*,
    200 F (9th Cir. 2000) ............................................................................................................. 14

*Cole v. Sunnyvale*,
    No. C-08-05017 RMW, 2010 WL532428 (N.D. Cal. Feb. 9, 2010) ....................................... 3

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
    35 Cal.3d 197 (1983) ............................................................................................................. 10

*Croeni v. Goldstein*,
    21 Cal.App.4th 754 (1994) ...................................................................................................... 8

*Global Acquisitions Network v. Bank of America Corp.*,
    No. CV 12-08758, 2013 WL 604159 (C.D. Cal. Feb. 19, 2013) ............................................. 9

*JMP Sec. LLP v. Altair Nanotechnologies, Inc.*,
    880 F.Supp.2d 1209 (N.D. Cal. 2012) ................................................................................... 12

*Masoud v. J.P. Morgan Chase Bank, N.A.*,
    No. 15-CV-2523, 2017 WL 6270269 (S.D. Cal. Dec. 8, 2017) ........................................... 2, 3

*McKenna v. Whisper Text*,
    No. 14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ........................... 2, 3, 13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Nada Pac. Corp. v. Power Eng'g & Mfg.*,
  73 F.Supp.3d 1206 (N.D. Cal. 2014) .................................................................................. 6

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Weil & Shapiro, LLP*,
  150 Cal.App.4th 384 (2007) ............................................................................................. 11

*Phillips v. Co. of Allegheny*,
  515 F.3d 224 (8th Cir. 2008) .............................................................................................. 3

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
  34 Cal.4th 979 (2004) ........................................................................................................ 6

*Stanislaus Food Prods. v. USS-POSCO Indus.*,
  782 F.Supp.2d 1059 (E.D. Cal. 2011) ................................................................................ 3

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
  2 Cal.App.4th 153 (1991) .................................................................................................. 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................................... 3

*Thomas v. Farley*,
  31 F.3d 557 (7th Cir. 1994) .............................................................................................. 13

**Statutes**

Cal. Civ. Code § 1649 ............................................................................................................ 12

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................................... 2

Fed. R. Civ. P. 9(b) .................................................................................................................. 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

**Other Authorities**

13 Witkin, *Summ. of Cal. Law*, Trusts § 361 (11th Ed. 2017 update) ................................. 11

# I. INTRODUCTION

Plaintiff Sustainable Ranching Partners, Inc.'s ("SRP") Opposition ("Opp.") (Dkt. 42) to the Motion to Dismiss SRP's Second Amended Complaint ("SAC") filed by Defendants Bering Pacific Ranches Ltd. ("BPR") and Patrick Harvie ("Harvie") (Dkt. 38 ["Mot."]) lacks merit. SRP repeatedly misstates the law governing the review of pleadings when challenged by a motion to dismiss and largely ignores the arguments and authority cited by defendants exposing the continued insufficiency of the purported claims and allegations asserted in the SAC.

SRP has now tried and failed three times to state plausible claims supported by non-conclusory allegations against defendants. SRP even reasserts dismissed tort claims the Court previously found barred by the economic loss rule and abandons the contract theory it previously relied upon to persuade the Court to assert personal jurisdiction over the defendants. Even indulging the policy liberally favoring the amendment of pleadings, this pattern of futility and evasion demonstrates that the time has now come to dismiss the SAC without leave to amend and this action with prejudice.

# II. ARGUMENT

## A. The Motion Properly Challenges the Plausibility of the Alleged Claims

SRP initially urges the Court to reject the motion as a "procedurally improper … de-facto motion for summary judgment," (*see* Opp. at 2:10-11), apparently because defendants argue based on Supreme Court precedent that the SAC fails to state a "plausible claim for relief." Mot. at 9:1-10:10 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1] This confused argument fails. First, SRP conflates defendants' showing that SRP has not pled plausible claims or legally sufficient allegations (*see* Mot. at 9:14-15:13), with an attack on the ultimate factual merits of the SAC. Under Federal Rule of Civil Procedure 12(b)(6) a complaint may be challenged and dismissed for failure to plead either a cognizable theory or sufficient facts to support such a theory (*see, e.g., Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990), which is precisely

---

[1] *See also* the Court's prior Order dismissing the SRP's First Amended Complaint ("FAC") (Dkt. 33 at 5:4-16).

the showing defendants made in their motion.

Next, SRP argues that any inquiry into "plausibility" of its claims or allegations must invariably give way to the presumption of truth afforded proper pleadings. *See* Opp. at 2:6-9. This general statement of the law, however, applies only to properly pleaded allegations and claims. Supreme Court authority plainly disentitles the pleading of legal conclusions and naked assertions of fact of any presumption of truth. *Iqbal*, 556 U.S. at 678-680. Legal conclusions and threadbare assertions of essential claim elements, however, are the consistent hallmarks of the SAC. *See* SAC ¶¶ 11, 14, 18, 24, 26-27, 30-34, 38, 41-42 and 45-46. Given these defects, very few of the allegations in the SAC enjoy a presumption of truth.

The Opposition further confuses matters by recasting and reinterpreting (and in some instances simply ignoring), the specific allegations of the SAC. SRP now argues that the SAC is based on "legal theories" which advance "two (2) core claims" (*see* Opp. at 6:9-10), notwithstanding that the SAC purports to allege six discrete claims on its face. How these so-called "core claims" are harmonized with the express contract claims previously alleged by SRP or the contract SRP again attached to the SAC as Exhibit A, is never explained either in the SAC itself or the Opposition. Tellingly, SRP openly frets about the thinness of its "core claims" by preemptively asking for leave to file yet a further declaration to support the allegations of the SAC. *Id.* at 2:15 n.3. Nor is this the first time that SRP has asserted a need to replead its evasive theories and ever-changing claims. *See* Dkt. 26 at 2:26-27.

Finally, SRP wrongly asserts that "[i]nconsistencies … are of no legal import in connection with a motion to dismiss," because plaintiffs, as the Opposition repeatedly argues, are allowed to plead inconsistent theories. Opp. at 7:13-17. But again, SRP misconstrues the law. While pleading inconsistent claims is allowed, repeated inconsistent and contradictory allegations such as those previously made by SRP, and which are made again in the SAC, eventually become a critical and ultimately fatal factor to the plausibility of SRP's purported claims. *See McKenna v. Whisper Text*, No. 14-cv-00424-PSG, 2015 WL 5264750 at *3 and n.32 (N.D. Cal. Sept. 9, 2015) (prior inconsistent allegations properly considered in evaluating plausibility of amended claims); *Masoud v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-2523,

2017 WL 6270269, at *4 (S.D. Cal. Dec. 8, 2017).

When evaluating the sufficiency of alleged claims under Rule 8, the district court "engages in a context specific task" which allows it to "draw upon its judicial experience and common sense" to determine the plausibility of an alleged claim. *Iqbal*, 556 U.S. at 679. Allegations merely consistent with a defendant's liability are insufficient under *Twombly*, and not entitled to a presumption of truth when framed as legal conclusions. *Id.* at 678-79. "Labels and conclusions," disembodied contentions or "threadbare recitals" of claim elements, such as are found throughout the SAC (*see, e.g., id.,* ¶¶ 11, 18, 26, 33-34, 36-37, 41) simply will not do. *Twombly*, 550 U.S. at 555. Moreover, when faced with an amended complaint, a court may reasonably demand more factual detail in light of prior, inconsistent or discarded allegations, or previously dismissed claims. *McKenna,* 2015 WL 5264750 at *3 and n.32; *Masoud*, 2017 WL 6270269 at *4; *see also Stanislaus Food Prods. v. USS-POSCO Indus.,* 782 F.Supp.2d 1059, 1076 (E.D. Cal. 2011). Ironically, SRP admits that, the abandonment of its contract theory notwithstanding, the SAC is based entirely on the *same* facts previously alleged in the FAC. Opp. at 3:26 ("In the SAC, Plaintiff's factual allegations are largely identical …").[2] The purported detail SRP claims to have added in paragraphs 9 through 13 of the SAC, apparently to address defendants' prior Rule 9(b) objections to the FAC, are merely "naked assertions" (*see Twombly*, 550 U.S. at 557) which neither add greater certainty or specificity to the allegations of the SAC, nor do they establish other crucial *prima facie* elements such as SRP's justifiable reliance on the representations alleged in the SAC in a non-conclusory manner. Even if SRP has staggered toward Rule 9(b) compliance, it still overlooks that its fraud claims were found wanting previously for reasons other than just adequate specificity. *See* Dkt. 33 (13:23-15:1).[3] Because it is admittedly based on old facts, the SAC is a pleading retread—it is little

---

[2] Oddly, this candid statement in the Opposition actually confirms that there are no new facts underlying the SAC. SRP underscores the point by repeating verbatim the Court's recitation of facts from its prior Order (Dkt. 33) dismissing the FAC and SRP's prior claims as conclusory and otherwise legally insufficient. *See* Dkt. 33 at 12:24-16:7.

[3] The specificity of the new allegations in the SAC is illusory in any event and the pleading still fails to meet the "time, place and manner" strictures of Rule 9. *See* SAC ¶¶ 9-10. All these redundant allegations do is add numbers to the previously insufficient conclusory allegations of fraud found in the FAC. *See* Dkt. 16, FAC ¶¶ 8-11. Nothing in the SAC explains how these statements attributed to Harvie were: (1) in fact false; (2) not discovered through the extensive diligence SRP's principal, Donati avers he undertook prior to executing the

more than a deflated series of conclusory facts and recast claims now ripe for final dismissal.

SRP plainly also does not understand the scope of information a reviewing court may rely on to resolve a motion to dismiss. Applying its experience and common sense, the Court not only places the challenged complaint "in context" (*see Phillips v. Co. of Allegheny*, 515 F.3d 224, 232 (8th Cir. 2008)), but may also look to materials attached to the complaint and other facts that are judicially noticeable. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Similarly, allegations made in prior complaints (or from other sources), especially if they contradict or are abandoned in the amended pleading, are significant part of the plausibility calculus. *See McKenna* at *3; *see also Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL532428 at *5 (N.D. Cal. Feb. 9, 2010) (greater detail required to meet the plausibility standard). Here the Court should look to the SPA attached to the SAC as Exhibit A (and every other complaint filed by SRP) and the prior sworn testimony its principal, Chris Donati (*see* Dkt. 26-1, Decl. of Chris Donati ISO of Opp. ["Donati Dec."]) to determine if the "new" claims of the SAC are plausible, or merely suggestive of or "consistent" with liability. SRP's sparse intentional fraud theory asserted in the SAC (*id.*, ¶¶ 9-13, *i.e.*, one of its two "Core" claims), is wholly undermined by the context of the parties' extensive written contractual relationship (*see id.* Ex. A), Donati's affirmations that the parties "vetted" their contract and the extensive due diligence SRP admits it conducted as recited in the agreement and confirmed by Donati himself. Donati Dec. ¶¶ 7-12; SAC Ex. A (LOI, Preamble and § 11). *See also, supra* at n.3. Even generously crediting such conclusory allegations as potentially "consistent" with defendants' liability, they still fall far short of a plausible claim for relief in the context of the existing record. *Id.* Such formulaic, threadbare facts, could just as easily suggest that defendants acted lawfully and consistently with an admitted contract relationship which Donato and SRP chose to abandon, but now re-label in a conclusory manner as "intentional fraud." *Iqbal*, 556 U.S. at 680. When multiple explanations can follow from alleged conduct, some of which is lawful, a pleader carries a greater burden to plead facts and

---

parties' written Stock Purchase Agreement ("SPA") (*see* SAC Ex. A); or, (3) the temporal sequence of the allegations and the diligence in connection with the timing of Donati's execution of the SPA.

claims with sufficient specificity to permit the Court to draw an inference of wrongdoing. *In re Century Aluminum Co. Sec. Litig.,* 729 F.3d 1104, 1107-08 (9th Cir. 2013).  SRP has not done so in the SAC.

There are many general and specific reasons for the Court to find the SAC wanting as against the plausibility standards announced in *Twombly* and *Iqbal*.  Among other things, the SAC now implausibly asserts no contract claim whatsoever, but nevertheless still inconsistently attaches the SPA as an exhibit and references the parties' "agreement" repeatedly (*see* SAC ¶¶ 12-13, 15, 18 and 25), all while seeking a declaration that the parties in fact have no binding contract, except for a separate, apparently unwritten, fiduciary agency agreement, with defendant Harvie to operate the "Cattle Business."  *Id.* ¶ 11.[4]  This bizarre theory, whether pled as a so-called "core claim" or something else, surely contradicts SRP's prior complaints confirming SRP's agreement to buy BPR's stock (*see, e.g.,* Dkt. 1, Complaint ¶ 7) and Dkt. 16, FAC ¶¶ 10-12) and Donati's prior sworn and unambiguous statements embracing the SPA as "the agreement reached by the parties," describing it as "the agreement to acquire BPR," (Donati Dec. ¶¶ 9-10) and affirming his execution of that contract after "multiple versions" were "vetted" by he and defendant Harvie.  *Id.* ¶ 7.

### 1. The Tort Claims Alleged in the SAC should Again be Dismissed

The SAC seeks to resurrect previously dismissed tort claims for fraud, negligent misrepresentation and negligence. *See* SAC (2nd, 3rd and 5th claims).  The tort claims run afoul of two significant problems: (1) the continued bar of the economic loss rule; and, (2) the failure of the SAC to plead any fraud claim plausibly given SRP's inability to plead its alleged reliance on anything other than a conclusory basis.  These "new" tort claims must be dismissed again.

---

[4] The SAC now asserts a fiduciary duty claim in the fourth cause of action supported by a single conclusory allegation (*id.* ¶ 11), but is otherwise devoid of any allegation showing the source of such a duty.  Furthermore, while the SPA and incorporated Letter of Intent ("LOI"), do include terms addressing the operation of BPR prior to the closing of the stock deal envisioned in the SPA (*see, e.g.,* SAC Ex. A [LOI § 3; SPA § 2]), nowhere does the "parties' [written] agreement" actually create any express fiduciary obligation on the part of Harvie.

### a. The Economic Loss Rule Continues to Bar the Tort Claims

The Court's prior Order dismissing the FAC, unambiguously held that SRP's fraud and negligence claims "are barred by the economic loss rule." Dkt. 33 at 14:8-9. Given that the Opposition admits that all the tort claims in the SAC are now based on "identical" factual allegations which SRP previously made in the FAC (which SRP quotes verbatim from the Court's prior Order in the Opposition [*see* Opp. at 3:26]), the tort claims alleged in the SAC follow the same fate as the previously dismissed tort claims. No argument raised in the Opposition alters this conclusion.

Notwithstanding SRP's conclusory arguments that it has now pled breach of an independent breach tort duty beyond its mere economic contract relationship with defendants (*see* Opp. at 8:13-14; 10:10; 12:6-8; 13:4-5), the Court clearly did have SRP's re-cast allegations of fraudulent inducement before it when it previously dismissed SRP's prior claims under the economic loss rule. Dkt. 16 (FAC ¶¶ 9-13 and 29-30) *see also* Dkt. 33 at 14:19-21. The substance of the fraud claim alleged in the SAC, a so-called "core claim," is identical to the dismissed fraud claims and supporting allegations in the FAC. *Compare* SAC ¶¶ 9-13, *with* FAC ¶¶ 9-11, 29-30. The only difference this time around, is that SRP now re-labels its conclusory allegations as "fraud in the inducement" in its Opposition. *Id.* at 5:9.[5] SRP even concedes that the dressed-up SAC is based on "*factual allegations [that] are largely identical*" to the dismissed FAC. Opp. at 3:26 (italics added).

SRP misconstrues the law again when it claims that the economic loss rule cannot bar claims for fraud. Opp. at 8:2-10:11 (*citing Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 989-90 (2004) and *Lazar v. Superior Court*, 12 Cal.4th 631, 645-46 (1996)). This Court has previously held that SRP's allegations of fraud are within the scope of the economic loss rule (*see* Dkt.33 at 14:19-21)—nothing asserted in the SAC changes that conclusion concerning the nature of SRP's claims or alleged damages which seek recovery for only alleged economic losses from the failed deal to acquire BPR's stock. Authority from this Court and

---

[5] It is noteworthy that the SAC nowhere makes an affirmative allegation or titles any claim as "fraud in the inducement."

others reject SRP's overbroad reading of *Robinson* as immunizing fraud claims from dismissal under the economic loss rule. *See, e.g., Nada Pac. Corp. v. Power Eng'g & Mfg*., 73 F.Supp.3d 1206, 1223-25 (N.D. Cal. 2014). Contrary to SRP's overbroad argument, Magistrate Judge Beeler notes in *Nada* that, "*Robinson* does not stand for such a broad proposition." *Id.* at 1223.

Instead, the proper focus is whether a claim alleges breach of a duty independent of the parties' economic relationship *and* seeks damages from a source other than a disappointed contract relationship. *Id.* at 1225 (*Robinson's* economic loss rule holding is "narrow and limited"). The facts in this case, pled by SRP itself and confirmed in the declaration of its principal Donati, confirm that this case is about performance of the "parties' agreement." *See* SAC, Ex. A; Dkt. 26-1, Donati Dec. ¶¶ 7-8, 9-10. By contrast, in *Robinson* the facts were very different. There the defendant's false certification of helicopter clutches clearly risked significant personal injury and property damage to the helicopters into which the falsely certified clutches had been installed. *See Nada*, 73 F.Supp.2d at 1224. Here, there are no remotely similar facts alleged; no act by Harvie alleged in the SAC can conceivably be linked to property damage or personal injuries to which SRP could have been exposed. In any event, SRP's allegation of "physical injury to tangible property and loss of use," is hopelessly conclusory and devoid of facts. *See* SAC ¶ 41. SRP has also managed to make only conclusory allegations of fraud (SAC ¶¶ 9-13), but even more significant is SRP's inability to plead facts which: (1) remotely suggest it has been damaged in any manner beyond the harm flowing from its failed contract to buy BPR's stock; or, (2) show that it justifiably relied on the conclusory misrepresentations it ascribes to Harvie. All of SRP's tort claims allege only a legal conclusion that, "as a result of this conduct, Plaintiff has been damaged." *See id.,* ¶¶ 16, 27, 34 and 42.

SRP also makes a strange argument that its negligence claim (*i.e.,* the 5th cause of action), is also not barred by the economic loss rule because it is only a claim for "defective services" purportedly provided by Harvie when managing BPR. Opp. at 10:12-15. According to SRP, this "mismanagement" claim flows from Harvie's negligence and self-dealing. *Id.* at 8:15-16; *see also* SAC ¶¶ 13, 36-37. This argument is completely without merit. First, the parties' written contract did contemplate that BPR's principal owner, Harvie, would operate

BPR prior to the completion of the due diligence SRP undertook and the closing of the SPA. SAC Ex. A (SPA §§ 2, 3.c. and LOI §§ 3, 8). Indeed, the Court previously dismissed the negligence claim in the FAC for the very same reason. Dkt. 33 at 14:22-28. Second, the SAC again pleads that Harvie was employed for a fee. SAC ¶ 11. Third, SRP's Opposition now concedes that the breach of fiduciary duty claim against Harvie, which specifically alleges that Harvie was retained to manage the "Cattle Business" in the fall and winter of 2016, "*lies in contract and not tort*." Opp. at 8:27-28 n.5 (italics added). The allegations supporting the negligence and fiduciary duty claims are therefore substantially identical in that they focus on Harvie's operation of BPR's facilities pursuant to a contract. *See* SAC ¶¶ 35-42.[6] Because the source of the alleged activity, "lies in contract and not tort," the negligence claim (and the fiduciary duty claim to the extent it seeks tort damages), are both be barred by the economic loss rule.

### b. The SAC Makes No Plausible Allegation of Reliance

SRP makes no opposition argument whatsoever challenging defendants' argument that the SAC nowhere pleads SRP's justifiable reliance on the misrepresentations it attributes to Harvie. *See* Mot. at 12:21-15:13. This omission is a fatal failure by SRP to plead an essential *prima facie* element of fraud. *Croeni v. Goldstein,* 21 Cal.App.4th 754, 758 (1994). The failure to plead reliance adequately provides an alternative basis to dismiss both the fraud and negligent misrepresentation claims in the SAC. *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157 (1991) (each element of fraud must be specifically pleaded).

Even the most cursory review of SRP's reliance allegations (*see* SAC ¶¶ 12, 26 and 33) reveals that they are entirely threadbare; the allegations are at best, empty legal conclusions. The best SRP can do is allege that it "relied" on the representations when it entered into the contract it attached to the SAC as Exhibit A. Not only are these conclusory allegations insufficient standing alone under *Twombly* and *Iqbal*, but in the context of the diligence proven

---

[6] The only difference between the two claims is a conclusory allegation in paragraph 41 of the negligence claim that SRP suffered "damages, including physical injury to tangible property as well as loss of use." As it did when it rejected similar conclusory allegations in the FAC, the Court should disregard such legal conclusions that fail to specify the nature or source of the physical injury or loss of use alleged. *Iqbal*, 556 U.S. at 681.

by the contract attached to the SAC, Donati's previous experience in the cattle industry and the affirmative representations in the Donati declaration of SRP's extensive diligence prior to executing the SPA, they become wholly implausible.  *See* SAC Ex. A (SPA §§ 2, 3.c. and LOI §§ 3, 8); Dkt. 26-1, Donati Dec. ¶¶ 7-12.

The reliance allegations (*see* SAC ¶¶ 12, 26 and 33) are particularly wanting because no effort has been made to explain or plead how SRP's reliance was reasonable or justifiable considering the facts previously alleged in its prior complaints or put before the Court in Donati's sworn declaration.  The LOI, written and sent by Donati to defendant Harvie, is particularly damaging because it specifically represents in its first paragraph that before acquiring BPR's stock and cattle operation, Donati would "further investigat[e] the best way to structure and finance [the] transaction and justify the expense and effort of required due diligence."  The SAC, however, is entirely silent on what diligence Donati undertook.  Despite representing: (1) the need for such diligence; (2) his own self-professed experience as a rancher; and, (3) inserting affirmative terms requiring Harvie to assist and cooperate in SRP's diligence process (*see* SAC Ex. A [LOI § 6]), the record before the Court, which is based entirely on the facts pled or sworn to by SRP, is undisputed that Donati nevertheless executed the SPA after spending time in Alaska conducting due diligence and sending his hand-picked representatives to BPR's Aleutian Island facilities.  Donati Dec. ¶¶ 2, 7-12.  In the absence of credible clarification or detailed reliance allegations, such facts not only destroy Donati's credibility, but also the plausibility of SRP's conclusory reliance allegations in the SAC.  In "context," the fraud and negligent misrepresentation claims must be dismissed as facially implausible.  *Iqbal*, 556 U.S. at 678-79.  A party that is experienced and well-equipped to discover facts concerning a significant transaction, yet fails to conduct adequate diligence or an inquiry prior to binding himself to an agreement, renders his reliance less than reasonably justifiable in the absence of pleading facts that explain in detail how or the way in which he was deceived.  *See Global Acquisitions Network v. Bank of America Corp.*, No. CV 12-08758, 2013 WL 604159 at *9 (C.D. Cal. Feb. 19, 2013); *see also Iqbal*, 556 U.S. at 679-80.

**2.     The Fiduciary Duty and Constructive Trust Claims both Fail**

SRP's Opposition never clearly explains the source of the fiduciary relationship Harvie is alleged to have undertaken in the SAC or the absence of such a duty from any of the "parties' [written] agreements" which Donati admits he drafted. Dkt 26-1, Donati Dec. ¶ 7. SRP points to paragraph 11 of the SAC, alleging that Harvie "undertook a fiduciary duty to Plaintiff to operate the Cattle Business on its behalf using best efforts." Other than this legal conclusion, there is nothing in the SAC or the Opposition that addresses how Harvie became or agreed to become SRP's fiduciary when he signed a contract to a sell BPR's stock that never mentions such a duty. Again, it is the context of this disembodied claim in the broader factual picture and specific allegations made in the SAC itself which mandate dismissal of this claim.

SRP all but ignores the inconsistent allegation in the SAC that Harvie allegedly committed himself to meet only a contractual standard of "best efforts" in operating BPR's cattle operation. *See* SAC ¶ 11; *see* Mot. at 17:20-26. The Opposition dismisses this issue as "verbiage" that "ignores the broader allegations." *Id.* at 11:9. But what allegations is SRP relying on? All it has asserted is an agency relationship (in its Opposition) and an alleged "best efforts" promise in the SAC itself. SAC ¶ 11. Even assuming the truth of the agency allegation, it is unclear how an agency relationship invariably results in a fiduciary relationship, without more. Certainly, SRP has cited no authority to the effect.

SRP does cite a case for the proposition that a fiduciary must use his "utmost good faith for the benefit of the other party" (*see* Opp. at 10:17-19 [*citing Gilman v. Dalby*, 176 Cal.App.4th 606, 613 (2009)]), but nowhere does the SAC allege that Harvie bound himself to a "good faith" or other trustee-like promise. And to the contrary, the SAC alleges only an agency relationship and "best efforts," which is not equivalent to a fiduciary obligation under California law. *Cal. Pines Prop. Owner Assoc. v. Pedotti*, 206 Cal.App.4th 384, 392, 395 (2012). To be bound as a fiduciary, the duty must be imposed either as a matter of law or knowingly assumed. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 221 (1983). Any factual detail explaining how such a duty arose is missing from the SAC; certainly, there is no allegation that Harvie knowingly became a fiduciary. The SAC and the Opposition also fails to

explain how something as important as Harvie's alleged fiduciary-agency relationship was omitted as a specific term from either the SPA or the LOI drafted by Donati on behalf of SRP. Again, as with its other claims, it is the inconsistent "context" of facts brought before the Court by SRP itself, that demonstrates the implausibility of the fiduciary duty claim. *See Iqbal*, 556 U.S. at 678-79.

Second, the Opposition now concedes, consistent with the "best efforts" allegation in paragraph 11 of the SAC, that the breach of fiduciary duty claim against Harvie "lies in contract and not tort." Opp. at 8:27-28 n.5. This curious statement only further muddies the source or legal basis for the "agency fiduciary" duty advanced by SRP for the first time in its Opposition, but significantly not in the SAC itself. If the fiduciary duty claim does not sound in tort, how can it support a claim for "exemplary relief" as pled in the Prayer to the SAC or support the imposition of a constructive trust if Harvie was simply bound to a contract, rather than a trustee relationship? The fiduciary duty claim is not only conclusory and legally insufficient, the supporting allegations are thoroughly confused, uncertain, contradictory and internally inconsistent—the claim clearly should be dismissed.

The constructive trust claim in the SAC is legally defective and duplicative of the barred fraud claims. The law in California is overwhelming that a constructive trust is not an actionable claim, but constitutes only a remedy. Mot. at 18:3-8 (*citing PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 398 (2007). Although such a remedy can arise from breach of a fiduciary duty (*see* 13 Witkin, *Summ. of Cal. Law*, Trusts § 361 [11th Ed. 2017 update]), SRP's inability to adequately allege such a duty, as explained above, also dooms this novel SAC theory.

SRP imaginatively tries to recast its defective constructive trust theory as an unjust enrichment claim that the Court should now somehow deem as being within the scope of SRP's declaratory relief claim. Opp. at 13:14-18. Fortunately, the Court need not entertain this fanciful suggestion that it somehow judicially extrapolate the allegations of the SAC, to dispose of this claim. Evening assuming SRP made the contributions to BPR's property as alleged in the SAC (*see id*. ¶¶ 44-45), nothing in the SAC or the Opposition explains how SRP is entitled

to or could recover that property, or how the contribution to BPR's real property and fixtures constitutes a definable *res* separate from BPR's property over which this Court could impose a trust or its jurisdiction over real property located in Alaska. *PCO, Inc.,* 150 Cal.App.4th at 398. This impracticality associated with SRP's claim, which the SAC never addresses, simply underscores the remedial nature of the constructive trust remedy and its inappropriateness in this case. *Id.* As a result, the allegations in the SAC fail to meet the basic requirements under California law to impose a constructive trust. *Id.* at 384, 398.

### B. The Declaratory Relief Claim should be Dismissed

#### 1. The Declaratory Relief Claim Duplicates the Fraud Claims and is Implausible

SRP now argues that its declaratory judgment claim should be allowed to stand because it no longer duplicates the contract claim it previously pled in the FAC, but has chosen to deliberately omit from the SAC. Opp. at 11:28-12:5. The Opposition further suggests that because SRP has leveled its SAC tort claims only against defendant Harvie, that choice in pleading somehow eliminates any issue of duplication or implausibility. *Id.* These arguments are wholly baseless.

First, the "new" tort claims against Harvie plainly are duplicated by the declaratory judgment claim because, according to SRP's allegations, its obligation "to further perform under the [parties'] Agreement" is excused by Harvie's alleged fraud or other breach of duty. *See* SAC ¶ 18. Thus, the tort claims, even if not otherwise dismissed under the economic loss rule or as implausible, plainly will resolve SRP's obligation to perform the contract. Second, the lynchpin of the declaratory judgment claim remains the conclusory allegation of fraud against Harvie. *Id.* But as explained above, that claim is independently barred by the economic loss rule and the Court's prior order (*see supra* at 5-7), even if SRP has now elected to not assert a contract theory directly in the SAC. *See JMP Sec. LLP v. Altair Nanotechnologies, Inc.*, 880 F.Supp.2d 1209, 1040, 1044 (N.D. Cal. 2012). Third, even if SRP's alternative conclusory allegation in paragraph 18 of the SAC that there was "no meeting of the minds" between the parties is liberally construed as a breach of contract claim, that declaratory

1  judgment claim still fails as implausible.  Nowhere has SRP even tried to plead or explain in a

2  non-conclusory fashion what terms are missing from the contract or how those terms precluded

3  the formation of the agreement that Donati has affirmatively and consistently testified was in

4  fact formed.  *See* Dkt. 26-1, Donati Dec. ¶¶ 7, 9-10.  The best the SAC can do is allege in a

5  conclusory fashion that there are certain unspecified ambiguities.  However, California law

6  provides for the resolution of contractual ambiguity under statutory rules (*see, e.g.,* Civil Code

7  § 1649) and the case law recognizes that ambiguity alone is not a basis to set aside an

8  agreement.  *Aragon-Haas v. Family Sec. Ins. Servs., Inc.*, 231 Cal.App.3d 232, 239 (1991).

9  SRP simply ignores these arguments in defendants' motion.

### 2. Judicial Estoppel Bars the Declaratory Relief Claim

11  Defendants have no quarrel with the general proposition that a party may plead

12  inconsistent theories or even refine or abandon theories in amended pleadings.  *See* Opp. at

13  7:13-17.  Nevertheless, a party like SRP crosses a line when it asserts new claims, allegations or

14  theories contradicted not just by the amender's prior allegations, but also by a party's sworn

15  testimony previously advanced to resolve a contested issue, such as SRP did in opposing the

16  motion to dismiss for lack personal jurisdiction issue brought by defendants.  Indeed, the

17  Court's prior Order (Dkt. 33) denying defendant's earlier jurisdictional motion to dismiss the

18  FAC, expressly relied on the now contradictory Donati declaration establishing a contract

19  between the parties as evidence supporting its ruling that "California has an interest in

20  protecting its residents in *contract disputes* with foreign entities." *Id.* at 11:20-26 (*citing* Dkt.

21  26-1, Ex. A).  Moreover, SRP affirmatively urged the Court to find that it had jurisdiction over

22  defendants based on a California contract it alleged existed between the parties in its prior

23  pleadings (*see* Dkt. 16, FAC ¶¶ 7-12) and in its prior opposition to defendants' motion to

24  dismiss.  *See, e.g.,* Dkt. 26 at 4:11-26 ("per the Agreement"); 9:5-25 ("performance was

25  contemplated in California").  SRP now abandons this contract theory after having secured

26  jurisdiction over defendants, for what it now perceives are more advantageous tort claims that

27  carry the prospect of greater damages and exemplary relief.

28  Such inconsistencies not only offend basic notions of fairness, they also weigh heavily

against the plausibility of SRP's amended claims and further demonstrate the likely futility of granting further leave to amend. *McKenna*, 2015 WL 5264750 at *3. By abandoning the contract theory pled in all of its earlier complaints in the SAC and as sworn to by Donati, SRP reverses course in such a way that invites judicial scrutiny and limitation. *See Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994). SRP either has a contract claim or it doesn't—the Court should not allow SRP continued latitude to disingenuously pursue an internally inconsistent and contradictory declaratory judgment contract theory that is neither fish nor fowl, while pleading only affirmative tort claims in the SAC seeking to gain a tactical advantage. *Id.*

While a party may plead inconsistent theories, he cannot amend his pleadings to "directly contradic[t] an earlier assertion made in the same proceeding." *Airs Aromatis, LLC v. Opinion Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (*citing Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). Yet, that is exactly what SRP is trying to do here. SRP's SAC disclaims all prior allegations affirming a contract among itself and defendants as well as the sworn representations of its principal Donati to the same effect. By doing so, SRP places an amended pleading before the Court that goes too far. The tort theory underlying the so-called "core claims" of the SAC (*see* Opp. at 6:9-14), expressly contradicts the contract theory that SRP first urged this Court to accept when the jurisdictional issue raised by defendants hung in the balance. The Court should rely on judicial estoppel to stop SRP from trying to have it both ways and bar it from pursuing an evasive and inconsistent contract theory it is declaratory relief claim. The Court should dismiss the declaratory judgment claim without leave to amend. *See Cline v. Industrial Maintenance Eng'g & Contr. Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000).

### C. The SAC should be Dismissed Without Leave to Amend

The time has come to end this litigation. Granting SRP further leave to amend will be a futile act that will only lead to further strained, inconsistent and dilatory pleading by SRP. SRP has had three swings of the legal bat, but each time it has struck out. Leave to amend should be denied and this case should now be dismissed with prejudice.

### III. CONCLUSION

On the basis of the foregoing argument and authority, Defendants request that the Court dismiss the SAC without leave to amend and enter a judgment of dismissal with prejudice in favor of defendants.

Dated: January 23, 2018            TROUTMAN SANDERS LLP

By: */s/ Dean A. Morehous*
    DEAN A. MOREHOUS
    Attorneys for Defendants
    BERING PACIFIC RANCHES LIMITED
    and PATRICK HARVIE

32131672